WATKINS, Judge.
This is an action brought by Sam Simpson against the Louisiana Department of Health and Human Resources for alleged medical malpractice. The suit was met by defendant’s plea of prescription which, after a hearing on the exception, was sustained.
We have thoroughly reviewed the record, including the exhibits and the written reasons for judgment prepared by the trial court. We find ourselves to be in complete agreement with the trial court’s written reasons for judgment given in sustaining defendant’s plea of prescription, adopt the trial court’s written reasons for judgment in our opinion, and quote from the trial court’s written reasons for judgment in full:
“This came before the court on an exception of prescription filed by the Department of Health and Human Resources, State of Louisiana. In January, 1971, Sam Simpson was involved in an auto accident near Alexandria, Louisiana. Because plaintiff was unconscious, he was rushed to Huey P. Long Hospital in Pine-ville, Louisiana, where he was treated and released 18 days later. Subsequently, Simpson continued to complain about his progressively deteriorating health, but was informed by the doctors at Huey Long Hospital that he merely suffered from arthritis.
“Sometime between the above accident and this law suit plaintiff moved to California. Late one night plaintiff felt a heaviness in his chest and was taken to *72 the hospital by his brother. This was in October of 1979. While at the hospital X-rays were taken, and plaintiff was informed by the treating physician, Dr. Mattson, that plaintiff had previously suffered a broken neck. Further, Dr. Mattson informed Simpson that he had had the broken neck for a long time. Thereafter, a Dr. Gail referred plaintiff to a Dr. Sanders for treatment of the improperly healed neck. In addition to the above problems, Dr. Sanders discovered plaintiff had also suffered a odontoid fracture in the neck. The neck has seven bones. Dr. Mattson informed plaintiff of problems at the C-5 level; additionally, Dr. Sanders found problems at the C-l and C-2 level. Obviously, although separate bones of the vertebrate are involved, they are closely allied and in the same immediate area.
“Plaintiff is now seeking damages for the defendant’s negligence in failing to discover and treat the above related problem. Suit was filed November 13, 1980. After filing an answer the defendant then later filed this peremptory exception of prescription alleging that plaintiff was aware of sufficient facts in October, 1979 to put him on notice of any negligence of defendant. Therefore, defendant argues, since suit was not filed until more than a year after the latest date in October, then plaintiff’s action has prescribed.
“The issue before the court is: What did the plaintiff know, and when did he know it? That is, when did this plaintiff become aware of facts which should have put him on notice? It is defendant’s position that plaintiff knew most certainly of the neck problems when he was explicitly informed by Dr. Mattson of such in October, 1979. On the other hand, plaintiff contends that plaintiff was not put on notice and was not fully aware of his injury until Dr. Sander’s discovery of the odontoid fracture in November, 1979.
“The prescription period in this case is one year. The court notes that the time period in this case is not governed by LSA-R.S. 9:5628 because this statute did not become effective until 1975, and moreover, the Supreme Court of Louisiana has held in Lott v. Haley, 370 So.2d 521 (La.1979) that this statute is not to be given retroactive effect. Rather, plaintiff’s case will be prescribed if plaintiff did not file suit within one year of the date plaintiff became aware of facts which would put him on notice of a possible cause of action.
“With respect to the notice question, the court observes that our Supreme Court and Courts of Appeal have uniformly held that a plaintiff need only have constructive notice of those facts which would enable a plaintiff to bring suit; actual knowledge is not required. Further, constructive notice is defined as notice sufficient to excite attention and put a potential plaintiff on his guard and call for further inquiry. Lott v. Haley; Cartwright v. Chrysler Corporation [255 La. 597], 232 So.2d 285, (La.1970); Sanders v. Blunt, 357 So.2d 620 (La.App. 1st Cir., 1978), writ refused; Sartin v. St. Paul Fire and Marine Insurance Co., 359 So.2d 649, (La.App. 1st Cir., 1978).
“It is the courts (sic) opinion that the plaintiff had more than enough facts and information on hand after his discussions with Dr. Mattson to inform him as to the nature of his injury and the possible cause of action which existed because of the hospital’s failure to properly diagnose the injury. This was in October, 1979, more than a year before suit was filed. Indeed, in plaintiff’s deposition he states repeatedly in response to questions by his own attorney that he knew he had had a broken neck when Dr. Mattson informed him of the fact October, 1979. More importantly, the plaintiff was aware of the probable connection, or nexus if you will, between the 1971 accident and the neck problems because plaintiff states in his deposition:
‘Q. (By defendants (sic) attorney): Did he (Dr. Mattson) tell you how long your neck had been broken?
A. He told me it had been for a long time.
Q. Did he tell you it was broken in 1971?
*73 A. He didn’t tell me no year at all. He just said it was an old break, so obviously it come from when I was broke up in 1971. That the only time I ever had a chance to get anything broke about me.’
This passage proves beyond doubt that plaintiff knew of the neck problems and that he connected them to the 1971 accident in October, 1979 when Dr. Mattson informed plaintiff of such. Plaintiff may not have known of the full extent of his neck problems in October, but the court finds he was aware of facts which put him on notice of possible negligent treatment in 1971. Knowing what plaintiff did in October, 1979, prescription commenced to run then and not in November, 1979; and consequently the court determines that plaintiff’s suit filed in November 1980 was untimely.
“The defendant’s exception of prescription will be maintained; judgment will be signed accordingly dismissing plaintiff’s suit at his cost.”
The judgment of the trial court is affirmed, at appellant’s cost.
AFFIRMED.