GUIDRY, Judge.
Charles A. Monceaux and Janette S. Monceaux brought this medical malpractice action on August 10, 1984 against the following ten defendants: Dr. Robert Dale Bernauer, South Cameron Memorial Hospital, Dr. Richard D. Sanders, Jennings American Legion Hospital, Dr. Harlie Bear-den, Dr. Harold Sabatier, Memorial Hospital of Lake Charles, Dr. Charles B. Woodard, Dr. Avery L. Cook, and Diagnostic Radiology Associates.[1] All named defendants filed exceptions of prescription based on the provisions of La.R.S. 9:5628. Following a hearing, the trial judge sustained the exceptions and dismissed plaintiffs’ suit as to all defendants. Plaintiffs appeal.
La.R.S. 9:5628 mandates that a medical malpractice action be brought within one year of the date of the alleged act of negligence or, in the alternative, within one year of the discovery of said negligence, but in no event later than three years after the alleged act of negligence. Plaintiffs allege that their suit was filed within one year of discovery of the alleged malpractice of defendants.
The relevant factual allegations are as follows.[2] Charles Monceaux was involved in a one-car vehicular accident on October 29, 1981. Following the accident, Mon-ceaux was treated for the injuries he sustained at Jennings American Legion Hospital by Drs. Bernauer and Bearden. Charles complained at that time of pain in his neck and chest. Following an examination, Charles was released from the hospital with a soft neck collar, having been advised that he had sustained a neck sprain.
For the next several months, Charles continued to experience pain in his chest, neck and radiating on down his left arm. He was readmitted to Jennings American Legion Hospital in December, 1981 and again in January, 1982, where he was examined and treated by Dr. Sabatier. Charles was then diagnosed as having ulcers, muscle strains and a sprained neck.
On January 20, 1982 and again on February 15, 1982, Charles was rushed by ambulance from his job as a tug boat captain to South Cameron Memorial Hospital due to the severe pain he was experiencing in his upper body and neck. The January trip to the hospital simply involved emergency room treatment, after which Charles was released to return to work that same day. On February 15, 1982, Dr. Sanders examined Charles at the hospital and concluded that he was suffering from ulcers and a possible heart attack. Charles was then transferred by ambulance to Memorial Hospital of Lake Charles for further observation. Charles was placed under the care of Dr. Woodard during his hospitalization in Lake Charles. Dr. Woodard initially thought that Charles had suffered a heart attack, but later concluded that Charles suffered only from high blood pressure. Dr. Woodard treated him for this latter condition. Charles remained under Dr. Woodard’s care until sometime in May of 1982.
On May 26,1982, Charles went to see Dr. James J. Trahan complaining of chest and neck pain and weakness of his arms. Charles related to Dr. Trahan that he had been involved in an automobile accident the previous year and that since then he had experienced severe pain in his neck, shoulders and arms, along with weakness and dizziness. On May 29, 1982, Dr. Trahan had Charles admitted to Our Lady of Lourdes Hospital in Lafayette for tests. The tests run on Charles’ heart and chest were negative. However, the x-rays per *1175 formed indicated a subluxation[3] of his C-6 vertebra on 0-7. Charles was thereafter referred to Dr. Stephen Ira Goldware, a neurosurgeon.
Dr. Goldware examined Charles on June 1, 1982 at Lourdes. Charles explained to Dr. Goldware that ever since his auto accident of October, 1981, he had been experiencing a great deal of pain in his neck with radiation of pain into his left upper extremity. Dr. Goldware diagnosed Charles’ neck condition as being a facet joint fracture with nerve root damage. He opined that Charles’ neck problems were the result of the 1981 vehicular accident. In an effort to relieve Charles’ neck pain, Dr. Goldware performed a posterior cervical fusion in July, 1982. This surgery was performed in an attempt to stabilize Charles’ spine and prevent further nerve damage. Despite Dr. Goldware’s attempts, Charles’ condition failed to improve.
On August 12, 1983, Charles was admitted to Southern Baptist Hospital in New Orleans where he was examined by Dr. Roger Smith, a neurosurgeon. Dr. Smith did not testify at the trial of the exceptions and his testimony was not offered by way of deposition. Plaintiff, Charles Monceaux, testified that Dr. Smith, upon reviewing the x-rays taken by Dr. Trahan at Lourdes as well as his own x-rays, told him that he had a “broken neck” which was damaged in several places. Dr. Smith also allegedly told Charles that the examining physician at the Jennings American Legion Hospital should have detected the damage which he had sustained to his neck in October, 1981 and should then have immobilized him. Finally, Monceaux testified that Dr. Smith informed him that, because of the increased movement in his neck since the accident, he has developed severe nerve damage which is now beyond repair.
Charles thereupon sought legal advice and filed the instant suit on August 10, 1984, alleging that the named defendants were negligent in failing to promptly diagnose his cervical fracture and to effectively immobilize his neck so as to avoid any possible nerve damage.
The trial judge rendered judgment in favor of the defendants, sustaining their exceptions of prescription. Although the judgment refers to oral reasons assigned on December 13, 1985, the record does not contain the oral reasons allegedly assigned. Therefore, we can only surmise the basis for the trial court’s ruling. Apparently, the trial judge found that Charles Mon-ceaux became aware of facts which put him on notice of a possible cause of action against defendants prior to his examination and consultation with Dr. Smith on August 12, 1983. Otherwise, the plaintiffs’ action would have been timely filed. We agree with the trial judge that the plaintiffs’ medical malpractice action against all defendants has prescribed for the following reasons.
As previously mentioned, plaintiff was examined by Dr. Trahan in May of 1982. At that time, plaintiff advised Dr. Trahan that he had been in an auto accident in October, 1981 and that since then he had suffered with pain in his neck and arms. Following an evaluation and x-ray studies of plaintiff, Dr. Trahan concluded that plaintiff’s neck pain was related to the 1981 accident. Dr. Trahan explained to plaintiff that he had a subluxation of his C-6 vertebra on the C-7 vertebra, which was probably caused by the auto accident. When asked by plaintiff why none of the previous doctors who examined him had detected this condition, Dr. Trahan explained that it may not have showed up on the initial x-rays. Dr. Trahan stated in his deposition that he felt that plaintiff understood his condition and the seriousness thereof.
Dr. Trahan then referred plaintiff to Dr. Goldware, who examined plaintiff and the x-ray series ordered by Dr. Trahan, on June 1, 1982. Dr. Goldware explained the x-rays to plaintiff and told him that he had nerve damage to his neck and a fracture of the facet joint. Dr. Goldware thereafter indicated to plaintiff his belief that the *1176 nerve damage stemmed from the 1981 auto accident. Plaintiff asked Dr. Goldware why his problem had not been detected by any of the previous physicians who had attended him since the accident. Dr. Gold-ware simply told plaintiff that it is possible to miss the diagnosis of a spinal fracture.
The trial court apparently determined that prescription began to run on plaintiffs’ malpractice action at the time when either Dr. Trahan or Dr. Goldware informed Charles that his neck injury was related to the 1981 automobile accident. Plaintiffs argue that prescription should not have commenced running until Dr. Smith allegedly informed him on August 12,1983, that he had a “broken neck” and that his prior physicians should have detected such.
In Ledet v. Miller, 459 So.2d 202 (La.App. 3rd Cir.1984), writ denied, 463 So.2d 603 (La.1985), this court discussed the issue of knowledge insofar as it triggers the commencement of the one-year prescriptive period for malpractice actions as follows:
“Prescription does not begin to run against one who is ignorant of facts that would entitle him to bring an action as long as such ignorance is not willful and does not result from his neglect. Young v. Clement, 367 So.2d 828 (La.1979). However, the prescriptive period set out in 9:5628 will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge. Sartin v. St. Paul Fire and Marine Insurance Co., 359 So.2d 649 (La.App. 1st Cir.1978). Constructive knowledge is whatever is notice enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which inquiry may lead, and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription. Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 (1970).”
The mere apprehension by plaintiff that something is wrong is not sufficient to start prescription unless plaintiff knew or should have known by exercising reasonable diligence that his injury may have been caused by acts of malpractice. Gunter v. Plauche, 439 So.2d 437 (La.1983).
Plaintiffs argue that, although Drs. Tra-han and Goldware did conclude that Charles’ neck problems were related to his accident of 1981, they did not inform him that the condition from which he suffered may have been prevented by timely diagnosis. Further, plaintiffs argue in brief that Drs. Trahan and Goldware “lulled [Charles] into believing that prior diagnosis may not have been possible”. We cannot agree with plaintiffs’ contentions.
Plaintiff was aware that he suffered a painful. injury to his neck as a result of the 1981 accident and that this condition did not improve with the passage of time but became progressively worse. It is clear from the record that in May and June of 1982 plaintiff, Charles Monceaux, was fully aware that, as a result of the October, 1981 accident, he had suffered a broken neck and severe nerve damage. Charles was also fully aware that his previous attending physicians had failed to diagnose this condition, such that he questioned both Drs. Trahan and Goldware as to the reason why this diagnosis had been missed. Neither Drs. Goldware nor Trahan denied that the previous physicians had failed to diagnose this condition but, in response, indicated that a spinal fracture was sometimes difficult to detect. Able counsel for plaintiffs suggests in brief that the response of Drs. Trahan and Goldware “lulled [Charles] into believing that a prior diagnosis may not have been possible”. We do not view their response in this light but rather consider their response as appropriate and candid. Neither denied a pri- or missed diagnosis however, neither was in a position to suggest malpractice as a reason therefor. Even were we to grant full credence to the self-serving testimony of Charles Monceaux regarding the information furnished him by Dr. Smith, this information only served to re-affirm the previous knowledge imparted to him by *1177 Drs. Trahan and Goldwaré, except that Dr. Smith allegedly informed plaintiff, Mon-ceaux, that his previous physicians should have detected the fracture of his neck.
Our law does not require that a patient be informed by a medical practitioner of possible malpractice before prescription will begin to toll. Lambert v. Metrailer, 485 So.2d 69 (La.App. 1st Cir.1986), writ denied, 488 So.2d 1023 (La.1986). Following Charles' examinations by Drs. Trahan and Goldware, he had sufficient command of the operative facts to excite further inquiry by him of possible negligence on the part of those who had previously attended him. Although plaintiff may not have known the full extent of his neck problems in May of 1982, he was aware of sufficient facts to put him on notice of the possible negligent treatment of his neck injury. Therefore, for these reasons, we conclude that plaintiffs’ suit filed on August 10, 1984 was untimely.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Plaintiffs are assessed with all costs of this appeal.
AFFIRMED.

. On motion of the plaintiffs, Diagnostic Radiology Associates was dismissed from the suit with prejudice on June 12, 1985.

. The evidence at the hearing on the exceptions consisted solely of the depositions of Charles Monceaux, Dr. James Trahan and Dr. Stephen Goldware. Therefore, we rely on the plaintiffs’ petition for those facts not established through the above depositions.

. Dr. Trahan explained in his deposition of May 2, 1985 that a subluxation is a forceful dislocation of one bone onto the other with torn ligaments and muscles.