485 So.2d 69 (1986)
Dr. L.L. LAMBERT, Dr. John McIntyre and Stanacola Employees Medical and Hospital Association
v.
Mrs. Ann F. METRAILER.
No. 85 CW 0680.
Court of Appeal of Louisiana, First Circuit.
February 25, 1986.
Dissenting Opinion March 25, 1986.
Rehearing Denied March 31, 1986.
Writ Denied May 30, 1986.
*70 F.W. Middleton, Jr. and Vicki M. Crochet, Baton Rouge, for Dr. L.L. Lambert, et al.
Risley C. Triche, Napoleonville, for Mrs. Ann F. Metrailer.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
WATKINS, Judge.
After a thorough review of the record in this matter and for the written reasons assigned by the trial judge which we adopt as our own, we find the judgment of the trial court denying the peremptory exception of prescription as to appellant, Dr. L.L. Lambert, to be correct and affirm accordingly.
All costs are to be borne by the appellant.
AFFIRMED.
GROVER L. COVINGTON, C.J., dissents and assigns reasons.
WRITTEN REASONS FOR JUDGMENT
This case comes before the Court on a petition and peremptory exception of prescription filed by plaintiffs, Dr. L.L. Lambert, Dr. John McIntyre, and Stanacola Employees Medical and Hospital Association. The central issue for this Court to determine is what date Ann Metrailer had actual or constructive knowledge sufficient to begin the running of the one year prescriptive period on her medical malpractice claim for failure to diagnose breast cancer.
In deciding this exception, two dates, August, 1981 and January 1982, are critical. The record in this case reveals the following facts: August 1981 is the date that Mrs. Metrailer was first informed she had cancer. This diagnosis was confirmed by Dr. J.P. Dupont after he performed a mamogram and biopsy. January 1982 is the date Mrs. Metrailer underwent surgery for removal of the cancerous breast. Between *71 August 1981 and December 1981, Mrs. Metrailer received chemotherapy treatments from Dr. Frederic Billings. These chemotherapy treatments were highly successful and had the effect of reducing the lump in Mrs. Metrailer's breast from the size of a large ball to that of a marble. (See deposition of Dr. Frederic Billings, III, Exhibit D-1, at page 37).
Plaintiff's argue in support of their exception that prescription began to run in August 1981 because this is the date Mrs. Metrailer discovered or should have been placed on inquiry that a negligent act or omission had occurred. See R.S. 9:5628. Plaintiff's suggest that the defendant's knowledge that she had cancer should be equated with knowledge that she had a potential claim for failure to diagnose cancer. The Court must reject this argument inasmuch as the facts of this case prove otherwise. The evidence adduced at the hearing, which includes the live and deposition testimony of Mrs. Metrailer and depositions of several treating physicians, preponderates in favor of Mrs. Metrailer's version of the case. This Court finds that Ann Metrailer did not possess knowledge, either actual or constructive, that she was a possible victim of medical malpractice until after she had surgery in January 1982. Therefore, her suit filed November 30, 1982 is timely.
In reaching this decision, the Court is guided by several factors. A review of other cases in our jurisprudence dealing with the issue of prescription in a medical malpractice context indicates wide variation such that each case must be decided on its own particular facts. Our law does not require that a patient be informed by an attorney that he has a medical malpractice action before prescription will begin to run. Likewise, it is not a requirement (but merely one factor to be considered) that a patient be informed by a medical practitioner of possible malpractice before prescription will begin to toll. See Andrus v. Patton, 394 So.2d 714, (La.App. 1981), footnote 1 at page 718. A Court may take into consideration such factors as a patient's educational background, intelligence, and past experience with medical procedures in assessing whether or not he had knowledge.
These general rules aside, it is also clear that in the highly technical area of medical malpractice a patient is not under a duty of self-diagnosis. As stated in Cordova vs. Hartford Accident & Indemnity Company, 387 So.2d 574 (La., 1980), the mere apprehension that "something is wrong" is not sufficient to start prescription unless plaintiff knew or should have known by exercising reasonable diligence that there was a reasonable possibility that his or her problem may have been caused by acts of malpractice.
In this case, the Court finds no lack of diligence on the part of Mrs. Metrailer in seeking to determine whether or not she had a cause of action for medical malpractice. Mrs. Metrailer had a right to place trust and confidence in her physicians during the period from August through December 1981 that they were doing everything possible to treat her cancer. The fact that the lump in her breast decreased in size after chemotherapy militates against a belief that she in fact would have a suit for malpractice.
Furthermore, depositions of the doctors indicate that neither Dr. Prosser, Dr. Dupont, Dr. Billings, nor Dr. Johnson ever informed Mrs. Metrailer during her treatment with them that she was a victim of malpractice. The Court can think of no reason why Mrs. Metrailer, a housewife and mother of five children, should be held responsible for having superior knowledge in such a complex area as cancer of the breast.
Based upon the foregoing written reasons, the Court hereby overrules the plaintiffs' exception of prescription. Counsel *72 for the prevailing party is to prepare judgment in accordance with this ruling.
Baton Rouge, Louisiana, this 1 day of March, 1985.
 /s/ Douglas M. Gonzales
 DOUGLAS M. GONZALES
 Judge, Division L
 19TH Judicial District Court
GROVER L. COVINGTON, Chief Judge, dissenting:
I dissent for the following reasons. The facts presented by this case lead me to conclude that Mrs. Metrailer possessed the requisite knowledge in August of 1981 to determine that she had possibly been a victim of Dr. Lambert's medical malpractice. The evidence shows that Mrs. Metrailer was concerned with the lump in her breast from the date of its initial discovery in April of 1976. There is indication that she continued to be concerned in spite of the assurances of Dr. Lambert. Each annual examination included a checking of her breasts. She said that she closely examined her breasts at least once a week to see if there was any change in the condition. In the later years of her enrollment at Stanacola she was aware that the lump in her breast had increased in size and had changed shape.
These facts indicate to me that during the five years prior to the diagnosis of cancer, Mrs. Metrailer was aware of her condition and the potential seriousness of it. When she was informed in August of 1981 that the lump was a malignant tumor, she possessed the requisite knowledge to bring suit for the alleged malpractice of Dr. Lambert. I reach this conclusion because of the circumstances leading up to the point in time when the correct diagnosis was made. Dr. Lambert had assured Mrs. Metrailer that the lump in her breast was harmless; she was extremely concerned about the accuracy of the doctor's diagnosis; she observed the change in shape and size of the lump; she sought another medical opinion; and she was then informed that the lump was cancerous. It was at this point that prescription began to run for her medical malpractice cause of action. See Simpson v. Dept. of Health & Human Resources, 423 So.2d 71 (La.App. 1st Cir.1982).