565 So.2d 482 (1990)
Vivianne HARLAN, Plaintiff/Respondent,
v.
Dr. Robert E. ROBERTS, Defendant/Applicant.
No. 21889-CW.
Court of Appeal of Louisiana, Second Circuit.
June 20, 1990.
Writ Denied October 19, 1990.
*483 Cook, Yancey, King & Galloway by Herschel E. Richard, Jr., Shreveport, for defendant/applicant.
James E. Franklin, Jr., Shreveport, for plaintiff/respondent.
Before HALL, FRED W. JONES, Jr., and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
In this action for damages as the result of alleged medical malpractice we granted the application of defendant, Dr. Robert Roberts, for supervisory writs to review the correctness of the trial court judgment overruling his exception of prescription. For the reasons set forth herein, we find that plaintiff's claim was not timely filed and reverse.
Issue Presented
The sole issue presented is whether the trial court erred in overruling defendant's exception of prescription, holding that prescription began to run on August 1, 1985 even though plaintiff had immediately experienced problems with the dental work in July, 1984, had demanded settlement in May, 1985 and contacted an attorney in July, 1985.
Factual Context
The record shows that plaintiff, Vivianne E. Harlan, first consulted defendant for dental work in March, 1984 following a referral from one of his patients. Plaintiff had one or two older partial dentures in her mouth which were quite worn and wanted to see what could be done. After being informed by defendant of her choices, plaintiff selected a Mays attachment which is a dental appliance similar to a bridge that hooks onto two crowns. According to the treatment plan agreed upon between plaintiff and defendant, plaintiff's upper teeth would be fitted with a fixed bridge and the lower teeth would be fitted with the Mays attachment.
On April 30, 1984 the upper teeth were prepared for fixed bridge work and temporary bridge work was cemented onto them. On May 23, 1984 the crown and bridge work on the upper teeth was completed. On May 31, 1984 two lower right teeth were prepared to be crowned and to have the attachment made to them in order to hold the Mays attachment. It appears the work on the lower teeth and the fitting of the Mays attachment was completed on June 21, 1984.
*484 Plaintiff immediately began experiencing problems with her dental work, particularly with the Mays attachment. The attachment cracked on several different occasions and required repair. Plaintiff repeatedly returned to defendant's office for repair work and expressed her dissatisfaction with defendant's dental services. It appears plaintiff continued to return for repairs to her dental work until May 15, 1985 at which time she told defendant she would not be back and demanded a cash settlement. In June, 1985 plaintiff called the Channel 3 Consumer Hotline and was advised to place pressure upon defendant and report her difficulties to the Louisiana Dental Association.
On June 24, 1985 plaintiff wrote the following letter to defendant:
"The offer you made to refund $400.00 of the $1400.00 I paid you for the maiz (sic) attachment, thrice broken, is totally unacceptable. Considering 10 months of recurring problems in addition to the trauma from the work that was done, and the fact that the original statement I received says `Porcelain Gold Bridge' and you stated recently that my teeth have a stainless steel bridge, I feel that nothing less than half what I have paid you will be fair to me. This is a very distasteful experience and I hope to close the case with this settlement. But if not, I am prepared to go to a lawyer if I have not heard from you in five (5) days."
In response, defendant sent plaintiff a letter enclosing a check for $700 along with release papers. Plaintiff received this letter on July 19, 1985 after returning from a trip. Before her trip, plaintiff had contacted an attorney on or about July 8, 1985 to explain her difficulties and made an appointment. Upon her return, plaintiff met with the attorney in the latter part of July, 1985 and paid him to write a demand letter to defendant, which was sent on August 1, 1985. On the advice of her attorney, plaintiff was examined by another dentist, Dr. Martin Clark, on July 22, 1985. A report of his findings was sent to defendant by the attorney in his demand letter. Plaintiff alleges this report was the first notice to her of actual malpractice by defendant.
On January 24, 1986 plaintiff's attorney wrote to her inquiring whether she was going to pursue a malpractice claim. In his letter, the attorney stated he was concerned about prescription as the dental services appeared to have been rendered in April, May and June, 1984. The attorney explained that a prescriptive period of one year was applicable to malpractice claims and noted it was in 1985 that plaintiff returned the cracked Mays attachment for the fourth time and wrote defendant requesting a settlement of the matter.
On July 21, 1986 plaintiff filed her claim with the Commissioner of Insurance, State of Louisiana. An opinion was rendered by the medical review panel on November 11, 1987. On December 30, 1987 plaintiff filed this action for damages as the result of alleged medical malpractice.
In her petition, plaintiff alleged her dental work was commenced in April, 1984 and corrections were made to the work by defendant through the summer of 1985. Plaintiff then learned from another dentist on or about August 1, 1985 that the work performed by defendant was below the standard of care which a dentist should have utilized in performing the work. Plaintiff alleged that due to the negligence and lack of skill of defendant, she had experienced extreme discomfort and emotional distress. Finally, plaintiff alleged that all the dental work performed by defendant would have to be replaced and she would be required to undergo extensive dental treatment for which she was entitled to compensation.
In response, defendant filed a peremptory exception of prescription alleging plaintiff's claim for medical malpractice arose out of dental treatment rendered to her between April 5 and June 21, 1984. On July 21, 1986, more than two years following the commission of the alleged acts of malpractice, plaintiff filed a petition to impanel a medical review panel. This suit was not filed until December 30, 1987. Thus, pursuant to La.R.S. 9:5628 which requires an action for malpractice to be brought within one year from the date of *485 the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect, plaintiff's action had prescribed.
At the hearing on the exception plaintiff testified she began having problems with the dental work, particularly with chewing, immediately after it was completed. She had a lot of odor from her upper teeth and those teeth were not adequately secured. The Mays attachment had holes as if bubbles had popped in it which filled with food and were difficult to clean. It broke on four separate occasions requiring repairs. The crowns on the two lower teeth to which the Mays attachment was secured came off on two occasions. Plaintiff stated that in May, 1985 she knew she wanted to have something done about the Mays attachment and she knew something was wrong at that time. Plaintiff had questions defendant did not answer and she had lost confidence in him. Plaintiff testified she was not aware of defendant's alleged malpractice until she received the report from the consulting dentist on August 1, 1985. She did not know anything about malpractice and did not know the work performed by defendant was defective from any other professional source before she consulted Dr. Clark.
The record reflects plaintiff finished high school and completed two years of junior college.
After reviewing the evidence and testimony, the trial court found plaintiff had timely filed her malpractice claim. The court noted that whether or not a claim has prescribed often turns on the reasonableness of plaintiff's action or inaction and that the one year prescriptive period commences running on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. The trial court reviewed the sequence of events in this matter, specifically plaintiff's contention she did not realize she had a legal claim until she received a report from the consulting dentist on August 1, 1985. The court found that prior to seeing Dr. Clark plaintiff had some real concerns regarding the repair work and was trying to get a better understanding of what she could realistically expect from her dental work. The unsuccessful efforts by defendant to satisfy plaintiff did not automatically alert her to any legal claim and plaintiff was not held to self-diagnosis. The court held it was not until the consulting dentist detailed his evaluation of her dental work that plaintiff could reasonably conclude a dental malpractice claim was viable. The court stated plaintiff acted reasonably and with due diligence under the circumstances. Based upon the facts of this case, the court concluded plaintiff's claim was timely filed within one year of the discovery of the alleged acts of malpractice.
Legal Principles
La.R.S. 9:5628 provides in pertinent part:
A. No action for damages for injury or death against any ... dentist ... duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
The rule of prescription set forth in La. R.S. 9:5628 is subject to the discovery rule in the doctrine of contra non valentem agere nulla currit praescriptio when that doctrine is invoked to suspend the running of prescription during the period in which the cause of action was not known by or reasonably knowable to plaintiff. Griffin v. Kinberger, 507 So.2d 821 (La.1987); Maung-U v. May, 556 So.2d 221 (La.App. 2d Cir.1990); Welch v. Saint Francis Medical Center, Inc., 521 So.2d 758 (La.App. 2d Cir.1988), writ denied, 524 So.2d 513 (La. 1988), and Poole v. Physicians & Surgeons Hospital, 516 So.2d 1185 (La.App. 2d Cir. 1987), writ denied, 519 So.2d 127 (La.1988) and 519 So.2d 128 (La.1988). However, the contra non valentem exception to prescription embodied in the discovery rule was expressly made inapplicable after three *486 years from the act, omission or neglect by the enactment of La.R.S. 9:5628. Whitnell v. Menville, 540 So.2d 304 (La. 1989); Chaney v. State Through Department of Health, 432 So.2d 256 (La. 1983), and Landry v. Lafayette General Hospital, 520 So.2d 947 (La.App. 3d Cir.1987).
The one year prescriptive period commences running on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. Constructive knowledge sufficient to commence the running of prescription requires more than a mere apprehension that something might be wrong. Prescription does not run against one who is ignorant of the facts upon which his cause of action is based as long as such ignorance is not willful, negligent or unreasonable. Thus, even if a malpractice victim is aware that an undesirable condition has developed at some point in time after the medical treatment, prescription will not run as long as it was reasonable for plaintiff not to recognize that the condition might be related to the treatment. Griffin v. Kinberger, supra; Maung-U v. May, supra; Chandarlis v. Shah, 535 So.2d 895 (La.App. 2d Cir.1988); Poole v. Physicians & Surgeons Hospital, supra; Monceaux v. Bernauer, 498 So.2d 1173 (La.App. 3d Cir.1986), and Percy v. State, E.A. Conway Memorial Hospital, 478 So.2d 570 (La.App. 2d Cir. 1985).
As noted by this court in Maung-U v. May, supra, although the "notice enough to excite attention ... and call for inquiry" rule set forth in Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 (1970) has been limited and redefined in later cases, "constructive" knowledge, as opposed to "actual" knowledge, is still recognized as the starting point of the prescriptive period. The focus is on the reasonableness of the inaction by plaintiff. The rule is whether the cause of action was known or reasonably "knowable" by plaintiff. Prescription does not run only as long as it is reasonable for plaintiff not to recognize that the condition may be related to treatment. When a plaintiff has knowledge of facts strongly suggestive that the untoward condition or result may be the result of improper treatment and there is no effort by the health care providers to mislead or cover up information which is available to plaintiff through inquiry or professional medical or legal advice, then the facts and cause of action are reasonably knowable to plaintiff. Inaction by plaintiff for more than one year under these circumstances is not reasonable. See also Griffin v. Kinberger, supra.
A review of the jurisprudence dealing with prescription in medical malpractice indicates that each case must be decided on its own peculiar facts. The law does not require that a patient be informed by an attorney he has a medical malpractice action before prescription will begin to run. Likewise, it is not a requirement that a patient be informed by a medical practitioner of possible malpractice before prescription will begin to toll. The court may take into consideration such factors as the patient's educational background, intelligence and past experience with medical procedures in assessing whether or not he had knowledge. Lambert v. Metrailer, 485 So.2d 69 (La.App. 1st Cir.1986), writ denied, 488 So.2d 1023 (La.1986).
Prescription of Claim
The crucial issue to be determined herein is what date plaintiff had actual or constructive knowledge sufficient to begin running the one year prescriptive period.
Plaintiff immediately began experiencing problems with her dental work, particularly with the Mays attachment, after her treatment was completed in June, 1984. She repeatedly returned to defendant's office for repair work until her last visit in May, 1985 and expressed her dissatisfaction with the dental work and defendant's services. She testified that her crowns became loose requiring cementing; the Mays attachment broke repeatedly necessitating at least four separate repairs; she had trouble chewing and experienced odor from the dental work on her upper teeth. In May, 1985 plaintiff informed defendant she would not be back and demanded a cash settlement. At this time she definitely knew something was *487 wrong with the Mays attachment. In June, 1985 plaintiff contacted a consumer hotline for help in pursuing some type of action against defendant. She also wrote defendant a detailed letter demanding settlement and advising him she was prepared to see an attorney.
Plaintiff's aggressive efforts to seek some relief from defendant in May, 1985 for her unsatisfactory dental work evidences her constructive, if not actual, knowledge of the alleged malpractice. Plaintiff was sufficiently apprised of the possibility of wrongdoing on the part of defendant to commence the running of the one year prescriptive period. It appears that at no time did the defendant mislead plaintiff. Plaintiff was aware of the difficulties she was experiencing with her dental work and continued to return for repairs and express her dissatisfaction.
Although plaintiff maintains she was not aware of the alleged malpractice until she received the report of Dr. Clark on August 1, 1985, it is clear from plaintiff's efforts to seek relief from defendant, particularly her letter of June 24, 1985, that she knew enough to have more than a mere apprehension her dental difficulties might relate to improper treatment.
Plaintiff's alleged lack of knowledge of the facts supporting her cause of action, if such facts existed, was due solely to her own neglect. The cause of action and supporting facts were known or reasonably knowable to her for more than a year prior to the filing of her claim with the Insurance Commissioner. Even assuming defendant's repairs to plaintiff's dental work acted to suspend the one year prescriptive period, prescription began to run at the latest on June 24, 1985 when plaintiff demanded compensation for her problems and indicated she would consult an attorney shortly thereafter. As plaintiff failed to file her claim for more than a year after this date, her claim prescribed.

Decree
For these reasons, the judgment of the trial court overruling the exception of prescription filed by defendant is REVERSED and there is judgment sustaining defendant's exception and dismissing plaintiff's action at her cost, both in the trial court and on appeal.