590 So.2d 677 (1991)
In the Matter of the Claim of Sharon GORE For Malpractice Against, Plaintiff-Appellant,
v.
Dr. Howard L. SNIDER, Sr., Defendant-Appellee.
No. 90-505.
Court of Appeal of Louisiana, Third Circuit.
November 13, 1991.
*678 Kelly & Salim, Robert L. Salim, Natchitoches, for plaintiff-appellant.
Plauche, Smith & Nieset, Frank M. Walker, Jr., Lake Charles, for defendant-appellee.
Before GUIDRY, DOUCET and KNOLL, JJ.
DOUCET, Judge.
Plaintiff, Sharon Gore, brought this action for damages against a dentist alleging medical malpractice for fracturing her jawbone during a tooth extraction. The defendant filed an exception of prescription. The trial judge sustained the exception and plaintiff appealed. We affirm.
The facts are undisputed. They are taken from the deposition of Sharon introduced at the hearing on the exception. Sharon went to the office of her dentist, Dr. Howard Snider, on February 16, 1987, complaining of a toothache. After an examination, Dr. Snider determined that the tooth had to be removed. During the extraction, he fractured her jawbone. After the procedure, Dr. Snider followed Sharon out of the door, put his arm on her shoulder and told her, "Sharon, we had a little problem here ... when we pulled that tooth ... I fractured your bone." He went on to say, "I hope you don't have no problems with it ... if you have any trouble whatsoever, Sharon, call me day or night."
The next day Sharon returned to Dr. Snider's office with complaints of extreme pain and swelling of her face. After being informed that Dr. Snider was not in the office, she was seen by the dental hygienist who recommended that she see a medical doctor. Taking that advice, plaintiff testified that she saw a Dr. Roncal, a general practitioner, who gave her a shot to reduce swelling and pain.
The next day, still experiencing pain and swelling, she called to schedule an appointment with Dr. Snider and was told that he was still not in the office, but that his son, Dr. Lee Snider, would be in and that she could see him. She did. She testified that Dr. Lee Snider prescribed medication and also recommended that she see a medical doctor for the swelling. Upon this advice, plaintiff said that she consulted a Dr. Richey who administered an injection, prescribed medication, and sent her home for bed rest.
One week after the extraction, the plaintiff's stitches were removed by Dr. Snider's hygienist. Three weeks later, the plaintiff was still complaining of pain and swelling.
Dissatisfied with the lack of improvement and on the advice of her attorney, the plaintiff scheduled an appointment with another dentist, Dr. Thomas M. Bowler. According to Sharon, Dr. Bowler x-rayed her jaw and confirmed the fact that her jaw was fractured. His notes attached to his affidavit indicated healing would take four to six weeks. Sharon testified that he told her that if she sued he would not testify against Dr. Snider. Dr. Bowler's affidavit states that she was referred to him by an attorney to see if there was a basis for legal action against Dr. Snider. The affidavit, introduced into evidence, states in addition, "I told Ms. Gore that I saw no basis for legal action against Dr. Snider."
For the next nine months, plaintiff sought no treatment but continued to have pain and took medication. She testified that in November 1987, she phoned Dr. Snider reminding him that he had fractured her bone nine months before and that she thought he ought to help her with her medical bills. According to her description of the conversation, Dr. Snider then asked if she was going to sue him. She said that she was not going to sue, but that she thought he should help her with her medical bills. The telephone conversation apparently ended at that point.
*679 Nearly a year later, in October 1988, the plaintiff was still experiencing pain and discomfort. She scheduled an appointment with a Dr. Laughlin, an oral surgeon. Her deposition reveals that Dr. Laughlin x-rayed and diagnosed her as having a "ruptured" jawbone, and prescribed therapy. She testified that she learned through a therapist that Dr. Laughlin was of the opinion that surgery would be needed to correct the problem. Plaintiff argues that she first became aware of a possible malpractice claim in October 1988, when she saw Dr. Laughlin.
On December 9, 1988, plaintiff filed a claim with the Medical Review Panel. This was approximately 22 months after the date of the alleged act of malpractice. The critical issue on appeal is what date plaintiff had actual or constructive knowledge sufficient to begin the running of the one year prescriptive period.
In Harlan v. Roberts, 565 So.2d 482, 485 (La.App. 2d Cir.1990), writ denied, 567 So.2d 1126 (La.1990), the applicable law was discussed on the issue of prescription of a dental malpractice claim.
La.R.S. 9:5628 provides in pertinent part:
"A. No action for damages for injury or death against any ... dentist ... duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
The rule of prescription set forth in La.R.S. 9:5628 is subject to the discovery rule in the doctrine of contra non valentem agere nulla currit praescriptio when that doctrine is invoked to suspend the running of prescription during the period in which the cause of action was not known by or reasonably knowable to plaintiff."
Plaintiff admitted that she knew something was wrong during the procedure because Dr. Snider had to call for assistance. Immediately after the procedure, Dr. Snider admitted that a problem had occurred in that he fractured her jawbone. The day after the procedure plaintiff's husband told her she looked as if "somebody has beat you with a bat." She complained of pain in her neck, arm and wrist and felt as if her ears were "going to bust." Plaintiff continued to have complaints of pain.
In Griffin v. Kinberger, 507 So.2d 821, 823 (La.1987), our Supreme Court laid down the rules:
"The one-year prescriptive period commences running on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. Lott v. Haley, 370 So.2d 521 (La.1979). Constructive knowledge sufficient to commence the running of prescription, however, requires more than a mere apprehension that something might be wrong. Cordova v. Hartford Accident & Indemity Co., 387 So.2d 574 (La.1980). Prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable. Young v. Clement, 367 So.2d 828 (La.1979). Thus, even if a malpractice victim is aware that an undesirable condition developed at some point in time after the medical treatment, prescription does not run as long as it was reasonable for the victim not to recognize that the condition may be related to the treatment."
(Footnote omitted)
The court in Harlan v. Roberts, supra at p. 486, stated that:
"Although the `notice enough to excite attention ... and call for inquiry' rule set forth in Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 (1970) has been limited and redefined in later cases, `constructive' knowledge, as opposed to `actual' knowledge, is still recognized as the starting point of the prescriptive period. The focus is on the reasonableness of the inaction by plaintiff. *680 The rule is whether the cause of action was known or reasonably `knowable' by plaintiff. Prescription does not run only as long as it is reasonable for plaintiff not to recognize that the condition may be related to treatment. When a plaintiff has knowledge of facts strongly suggestive that the untoward condition or result may be the result of improper treatment and there is no effort by the health care providers to mislead or cover up information which is available to plaintiff through inquiry or professional medical or legal advice, then the facts and cause of action are reasonably knowable to plaintiff. Inaction by plaintiff for more than one year under these circumstances is not reasonable."
Dr. Bowler's medical report introduced into evidence shows that the plaintiff was referred to Dr. Bowler by her attorney. This report is dated March 17, 1987, four weeks after the tooth extraction. Apparently, the plaintiff consulted with her attorney for consideration of a possible malpractice claim against Dr. Snider. At this point, we find that the cause of action was known or reasonably "knowable" by plaintiff.
Assuming arguendo that the plaintiff did not have constructive knowledge after consulting with her attorney, we find that constructive notice was clearly evident when she requested Dr. Snider to help pay for her medical bills in November of 1987. In her deposition, the plaintiff testified that the following conversation with Dr. Snider took place in November of 1987:
"A. He said, "well, are you going to sue?" And I said "well," I said, "I'm not going to sue", but I said, "I think you should help me with my medical bills" and I said, "I lost my job because of this", and I said, "I'm still not you know, over it." I said, "something needs to be done." I said, "I think you ought to help me with that."
This effort to seek monetary relief from defendant in November of 1987 for medical bills evidences her constructive knowledge of the alleged malpractice, thus beginning the running of the one year prescriptive period. Plaintiff's claim was filed on December 9, 1988. Due to the failure to file her claim within one year of her request for help with the medical bills, her cause of action had prescribed.
Sharon's contention that the facts and cause of action were not reasonably knowable until her encounter with the oral surgeon in October 1988, is not supported by the record.
"A review of the jurisprudence dealing with prescription in medical malpractice indicates that each case must be decided on its own peculiar facts. The law does not require that a patient be informed by an attorney he has a medical malpractice action before prescription will begin to run. Likewise, it is not a requirement that a patient be informed by a medical practitioner of possible malpractice before prescription will begin to toll. The court may take into consideration such factors as the patient's educational background, intelligence and past experience with medical procedures in assessing whether or not he had knowledge. Lambert v. Metrailer, 485 So.2d 69 (La.App. 1st Cir.1986), writ denied, 488 So.2d 1023 (La.1986);"
Harlan v. Roberts, supra.
For the foregoing reasons, we affirm the judgment of the trial court. Costs on appeal are assessed to the appellant.
AFFIRMED.