JiPEATROSS, Judge.
In this medical malpractice action, Arthur A. Herold, III, and Brenda Jane Herold (“Plaintiffs”) appeal the judgment of the trial court which granted the exception of prescription filed by defendant Jorge L. Martinez, M.D. (“Dr. Martinez”) and dismissed with prejudice the suit originally filed by Arthur A. Herold, Jr., M.D. (“Dr. Herold”).[1]
FACTS
On September 21, 1993, Dr. Herold, a retired internist who had practiced in Shreveport for many years, underwent a three-level laminectomy on his cervical spine. The surgery was performed by Dr. Martinez, who continued Dr. Herold’s post-operative care until March 23, 1994. During this period of time, Dr. Herold’s condition worsened. Due to his pain, he was having trouble sleeping and was losing weight, strength and energy. In addition, he developed a condition known as “swan neck,” where his neck was bent sharply to the left and could not be straightened without pain. On April 6, 1994, Dr. Herold consulted with Dr. Michael Hammer, a specialist in pain management. Dr. Hammer performed a left fifth cervical selected nerve root block.
In September 1994, Dr. Herold flew to California where his daughter lived and began treatment with Dr. Ulrich Bueff, professor of cervical surgery at the University of California at San Francisco. Dr. Bueff performed surgery to repair the swan neck deformity and alleviate Dr. Herold’s pain. Dr. Herold alleges that during his hospitalization, he'was informed by Dr. Bueff that Dr. Martinez’s ^treatment and care was below the standard of care which is reasonably expected from a neurosurgeon.
On August 31, 1995, Dr. Herold filed a medical malpractice claim with the Louisiana Patient’s Compensation Fund seeking a medical review panel. Dr. Martinez filed an exception of prescription on October 23, 1996, which the trial court sustained. Plaintiffs appeal the judgment of the trial court.
DISCUSSION
Plaintiffs assign as error the trial court’s conclusion that Dr. Herold’s claim had prescribed. They argue Dr. Martinez had the burden of proving that the claim had prescribed and that prescription did not begin to run in this ease until September 1994 when Dr. Bueff informed Dr. Herold of the alleged *662 malpractice. The trial court made no determination as to which party carried the burden of proof, and we do not find.it necessary to make such a determination on. appeal.
Plaintiffs contend the record contains no evidence to indicate that, prior to September 1994, Dr. Herold “was aware of any tortious conduct or relationship between the damage and that tortious conduct.” Since Dr. Herold filed his complaint on August 31,1995, argue Plaintiffs, the claim was not prescribed because it was filed within a year of September 1994. Dr. Martinez argues that prescription began to toll as early as March 23, 1994 (Dr. Herold’s last visit to Dr. Martinez), or as late as April 6, 1994 (Dr. Herold’s first visit with Dr. Hammer). We review the factual conclusions of the trial judge under the manifest error/clearly wrong standard of review as articulated in Stobart v. State, Through Dept. of Transportation and Development, 617 So.2d 880 (La.1993). Masters v. Fields, 27,924 (La.App.2d Cir. 1/24/96), 666 So.2d 1333.
LSA-R.S. 9:5628 provides in pertinent part:
|3No action for damages for injury or death against any physician ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
To determine whether a plaintiff had knowledge of his potential medical malpractice claim at a particular timé, the focus is on the reasonableness of the' inaction by plaintiff. The rule is whether the cause of action was known or reasonably knowable by plaintiff. Prescription does not run as long as it is reasonable for plaintiff not to recognize that the condition may be related to treatment. ■ When a plaintiff has knowledge of facts strongly suggestive that the untoward condition or result may be the result of improper treatment and there is no effort by the health care provider to mislead or cover up information which is available to plaintiff through inquiry or professional medical or legal advice, then the facts and the cause of action are reasonably knowable to plaintiff. Inaction by a plaintiff for more than one year under these circumstances is not reasonable. Chandler v. Highland Clinic, 28,204 (La. App.2d Cir. 4/3/96), 671 So.2d 1271; Harlan v. Roberts, 565 So.2d 482 (La.App. 2d Cir. 1990).
When a party has sufficient information to incite curiosity, to excite attention or to put a reasonably minded person on guard and call for inquiry, he or she has the constructive knowledge necessary to start the running of prescription. White v. Willis-Knighton Medical Center, 25,575 (La.App.2d Cir 2/23/94), 632 So.2d 1198; Tilley v. Kennedy, 605 So.2d 226 (La.App. 2d Cir.1992). As stated by this court in Harlan:
The law does not require that a patient be informed by an attorney he has a medical malpractice action before prescription will begin to run. Likewise, it is not a requirement that a patient be informed by a medical practitioner of possible malpractice before prescription will Ubegin to toll. The court may take into consideration such factors as the patient’s educational background, intelligence and past experience with medical procedures in assessing whether or not he had knowledge. Lambert v. Metrailer, 485 So.2d 69 (La.App. 1st Cir.1986), writ denied, 488 So.2d 1023 (La. 1986).
The trial judge concluded in his judgment that “ ... the plaintiff had discovered the alleged act, omission or neglect of the defendant more than one year prior to filing his complaint on August 31, 1995.... ” Based upon the record before us, we find that this conclusion is not manifestly erroneous.
Dr. Herold testified in his deposition that, after the surgery performed by Dr. Martinez, he experienced great pain in his neck which was bent sharply to the left. In describing his condition subsequent to the surgery, Dr. Herold stated:
*663 I was losing strength and energy. I was losing weight. I couldn’t eat. I couldn’t sleep; and I was generally becoming, from my perspective, I was becoming an invalid.
When asked if he continued to see Dr. Martinez after March 1994, Dr. Herold responded, “No, I pretty well gave up by that time.” In addition, Dr. Herold stated that after terminating his treatment with Dr. Martinez and prior to visiting Dr. Hammer, he believed he had a poor result from the surgery. Dr. Herold was “resentful” toward Dr. Martinez because Dr. Martinez would not agree with Dr. Herold concerning Dr. Herold’s personal evaluation that he had a poor result. Dr. Herold also said that he visited Dr. Hammer “for a[sie] opinion.”
From this evidence, the trial judge could reasonably conclude that Dr. Herold knew or should have known of his cause of action as early as April 6, 1994 (Dr. Herold’s first visit to Dr. Hammer). He was in severe pain, could not straighten his neck and could not participate in many of his pre-surgery activities. In addition, Dr. Herold terminated his treatment with Dr. Martinez and visited Dr. Hammer for an opinion. In light of Dr. Herold’s “swan neck” condition and his 15persistent pain following the surgery, it was not reasonable for him to wait twenty-three months (from the date of the surgery) to assert his claim. Since he did not file his complaint until August 31, 1995, the claim was prescribed.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Plaintiffs.
AFFIRMED.

. The original appeal in this suit (Docket No. 29939-CA) was remanded by this court because Dr. Herold died on October 9, 1996, and the proper parties had not been substituted. Arthur A. Herold, III, and Brenda Jane Herold were substituted as parties plaintiff by order dated August 8, 1997; and an amended judgment, signed by the trial judge on September 22, 1997, granted Dr. Martinez's exception of prescription and dismissed Plaintiffs’ suit.