h CARAWAY, J.,
dissenting.
I respectfully dissent from the majority’s view that the Worker’s Compensation Act’s requirement for a diagnosis of a mental illness under the Diagnostic and Statistical Manual of Mental Disorders (DSM) speaks to the issue of prescription. The DSM requirement is in the definitional section of the Act and was designed to give definitional clarity for claims of mental injury. The section of the Act that addresses prescription is Section 1209, and no special exception is made in that section for the flawed idea of prescription which the majority has now embraced.
Due to problems of pinpointing the cause for mental stress claims which can result from multiple sources in and out of the workplace, Sections 1021(7)(b) and (d) contain some strict standards which must be met before a mental-mental claim is recognized. Most significantly, the law requires that “a sudden, unexpected and extraordinary stress” event occurs in the employment. This event serves as a clear marker for all concerned, the employee, the employer, and the trier-of-fact. Additionally, the Act requires the higher burden of proof by clear and convincing evidence of the mental-mental injury. Finally, the DSM diagnosis is also a clear medically recognized .standard. These strict standards serve to insure segregation of workplace mental injury from other mental health problems but were not designed to liberalize the normal rule for prescription.
Moreover, the standard for a “sudden, unexpected and extraordinary stress” additionally works to define an event for prescription whereby the employee gains a clear notice of injury. In this case, because of the June 3, 1996 Bayles/Conley confrontation, Conley’s mental state was shattered and he became unable to return to work. With this combination of a known event and resulting damage in the form of loss wages, the law for prescription has never required that an injured | ^plaintiff must further receive professional notification from either a physician or lawyer before the commencement of the running of prescription. See, Harlan v. Roberts, 565 So.2d 482 (La.App. 2d Cir.1990), writ denied 567 So.2d 1126 (La.1990).
While the Act does not contain the diagnostic prescriptive rule which the majority has now fashioned, it is instructive to compare the so-called “developing injury” rule which is listed in Section 1209(A). That rule provides that “when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops.” The jurisprudence interpreting this rule holds that development of injury means development of disability so that the time from which the employee can no longer perform the duties of his employment is the clear marker for the commencement of prescription. Holcomb v. Bossier City Police Department, 27,095 (La.App.2d Cir.8/25/95), 660 So.2d 199. This developing injury rule is a limited statutory recognition of the discovery rule of the doctrine of contra non valentem. That rule provides that prescription does not run only as long as it is reasonable for plaintiff not to recognize that his condition may be related to the act of negligence. Harlan v. Roberts, supra at 486.
In this case, it is unreasonable to hold that after the sudden, unexpected and extraordinary event of June 3, 1996 by which *341 Conley became unable to work, he was unaware of the significance of his work-related injury. Prescription should- not turn on whether one DSM diagnosis of depression in June of 1996 was deficient in relation to the “true diagnosis” six months later of schizophreniform disorder paranoid type. The psychiatric labeling of Conley’s condition did not add to his basic understanding that he had become injured on the job.