11 JAMES F. McKAY III, Judge.
The plaintiffs, Terri Ann Jastram, wife of/and Bart Lambert, individually and on behalf of their minor child, Jeffrey James Lambert (the Lamberts), appeal the trial court’s maintaining of the defendant’s, Associated Catholic Charities of New Orleans, Inc.’s (ACC), exception of prescription. We affirm.
Jeffrey Lambert was born on September 9, 1982 and was placed with ACC for adoption by his birth mother. Jeffrey was placed with the Lamberts on September 14,1982 and was formally adopted by them on August 16,1983.
For the first three years of his life, Jeffrey was small compared to other children his age. He was also a late talker and a late walker. In 1985, while Jeffrey was attending the Nazarene daycare center, a teacher informed Mrs. Lambert that she felt Jeffrey appeared slow compared to other children his age. This comment caused Mrs. Lambert such concern that she brought Jeffrey to see his pediatrician, Dr. Gerald Mayer, not once but twice. Although Dr. Mayer thought Jeffrey was normal, he recommended that Mrs. Lambert bring Jeffrey to Dr. Caroline Duncan, a pediatric neurologist at LSU. Dr. Duncan told Mrs. | ¡.Lambert that Jeffrey showed delays in his development and could have learning disabilities. Dr. Duncan also suggested that Mrs. Lambert contact the St. Tammany Parish School Board to have Jeffrey tested for placement in a special school for slow learning children.
The St. Tammany Parish School, Board tested Jeffrey and he was found to have speech delays; he was enrolled in a special preschool program where he underwent speech therapy for approximately three years. When Jeffrey was six years old, he *1151 began kindergarten at St. Ann School. Jeffrey had behavioral problems at St. Ann and his parents removed him from St. Ann at the half-year point.[1] Jeffrey was then enrolled at Atonement Lutheran School to finish the kindergarten school year. At the end of the school year, Atonement school administrators told Mrs. Lambert that Jeffrey was very immature as compared to other children his age and recommended that Jeffrey not advance to first grade but be enrolled in a transitional grade in between kindergarten and first grade. Jeffrey was then enrolled in the transitional grade at Abney Elementary School.
While at Abney, Jeffrey continued to have developmental and behavioral problems; he was also placed on Ritalin. In December of 1989, Mrs. Lambert had Jeffrey evaluated for growth hormone injections. She also took Jeffrey back to see Dr. Duncan. During this visit, Dr. Duncan informed Mrs. Lambert that Jeffrey had a small head circumference and still lagged in his development; these comments caused Mrs. Lambert to contact ACC seeking background information on Jeffrey’s Rbirth parents. Dr. Duncan also referred Jeffrey to Dr. Jayashree Rao, a pediatric endocrinologist at Children’s Hospital. Dr. Rao examined Jeffrey in March of 1990 and told Mrs. Lambert that Jeffrey’s height and weight were lagging behind what was considered normal for a child of his age. Dr. Rao also told Mrs. Lambert that Jeffrey’s problems were related to a prenatal event. On October 23, 1990, Mrs. Lambert brought Jeffrey back to Dr. Duncan. After this visit, Dr. Duncan advised Mrs. Lambert that in her opinion Jeffrey had fetal alcohol syndrome with impaired attention, impaired growth and microcephaly.
On July 11, 1991, the Lamberts filed suit in these proceedings alleging that ACC had negligently handled the adoption of their son, Jeffrey, by failing to diligently investigate the background and health history of the natural parents. The Lam-berts also asserted that ACC had misrepresented and/or failed to disclose to them certain pertinent facts which, if known to them would have caused them not to go through with the adoption. A first supplemental and amending petition was filed on May 10, 1993 and a second supplemental and amending petition was filed on January 17, 1995. ACC filed exceptions of no cause of action and prescription on September 17, 2001. The exceptions were heard on October 8 and 10, 2001. On December 7, 2001, the trial court rendered its judgment ruling only on the exception of prescription; the trial court maintained that exception and dismissed the Lam-berts’ suit. It is from this judgment that they now appeal.
On appeal, the plaintiffs raise the following assignments of error: 1) the trial court erred in determining that, as a matter of law, the Lamberts had information |4more than one year prior to filing suit sufficient to place them on notice of a possible cause of action against ACC; and 2) the trial court erred in determining that the Lam-berts’ suit against ACC was not timely filed and in dismissing the Lamberts’ suit on the grounds of prescription.
As a general rule prescription begins to run when a plaintiff has actual or constructive notice of the alleged tortious act. Mistich v. Cordis Mfg. Co., 607 So.2d 955, 956 (La.App. 4 Cir.1992). The doctrine of contra non valentem agree non nulla currit praescriptio may suspend the running of prescription during the period *1152 in which the cause of action was not known by or reasonably knowable by the plaintiff. Harlan v. Roberts, 565 So.2d 482 (La.App. 2 Cir.1990). In Jordan v. Employee Transfer Corp., 509 So.2d 420 (La.1987), the Louisiana Supreme Court held that prescription begins to run, not at the earliest possible indication that the plaintiff may have suffered some wrong, but rather when the plaintiff has a reasonable basis to pursue a claim against a specific defendant.
In the instant case, although it was not until October 23, 1990 that Jeffrey was formally diagnosed with fetal alcohol syndrome, there were signs that he was not normal as early as 1985. From that time on, Jeffrey had behavioral problems in school, was placed in special education classes, was seen by numerous physicians, and was prescribed a number of special medications and hormones. In fact in March of 1990 when Dr. Rao told Mrs. Lambert that Jeffrey had likely suffered a prenatal injury, she was given actual knowledge by a medical professional that a Impermanent impairment existed. This knowledge was so important in Mrs. Lambert’s mind that it caused her to seek out additional information from ACC.
This Court has held that the knowledge of permanent impairment, without a formal diagnosis of fetal alcohol syndrome, is enough ' to place an adoptive parent on notice and thus trigger the running of prescription. April v. Associated Catholic Charities of New Orleans, 629 So.2d 1295 (La.App. 4 Cir.1993).. Accordingly, we find no error in the trial court’s maintaining the defendant’s exception of prescription.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. These behavioral problems led Mrs. Lambert to have Jeffrey evaluated by a child psychologist, Dr. Fontenelle.