300 So.2d 61 (1974)
Harry E. BOSWELL and Jewell Boswell, His Wife, Appellants,
v.
Edwin DICKINSON and Margaret Dickinson, His Wife, Appellees.
No. U-138.
District Court of Appeal of Florida, First District.
August 22, 1974.
Rehearing Denied September 27, 1974.
David A. Monaco, of Raymond, Wilson, Karl, Conway & Barr, Daytona Beach, for appellants.
Richard S. Graham, of Landis, Graham, French, Husfeld, Sherman & Ford, Daytona Beach, for appellees.
BOYER, Judge.
This appeal is taken from a final judgment wherein the trial judge denied specific performance of a contract for the sale and purchase of real estate, holding that the parties had, by their actions, evinced a mutual design or intent that the contract be abandoned or rescinded.
We reverse.
On or about October 16, 1971 the plaintiffs below (appellants here) entered into a written contract to purchase certain property owned by the defendants below (appellees here). The buyers, who were experienced dealers in real estate, prepared the contract which called for a closing date on or before January 10, 1972. That contract was taken by the property owners to their attorney, a Mr. Hawkins, who approved it, whereupon it was executed by the sellers. A short time thereafter the buyers requested the sellers' attorney to handle the transaction for both parties, it being the impression of the buyers that it would not be necessary for them to retain separate counsel. The contract called for a cash transaction. Sometime in December of 1971 the buyers related to attorney Hawkins that the buyers anticipated borrowing the money for the closing of the transaction from a local bank at an interest rate of 7 1/2 percent per annum, inquiring of Mr. Hawkins whether his clients, the sellers, would be interested in taking a purchase money mortgage at *62 the same interest rate, thereby obtaining a higher rate of interest than would then be reasonably anticipated by their reinvesting the proceeds of the sale. Attorney Hawkins replied that he would check with the sellers and he testified at the trial that he did so and that the sellers indicated that they would consider such arrangement if certain details, such as method of payment and method of releasing lots, could be agreed upon. Mr. Hawkins further testified that he related the sellers interest to the buyers and shortly thereafter the buyers delivered to him some drawings or sketches for submission to the sellers. The sellers and their attorney, Mr. Hawkins, examined the sketches but were unsure of the amount to be required for releases, the order in which lots were to be released and other such matters. This uncertainty was reported to the buyers who replied to the attorney that any arrangement satisfactory to the sellers would be acceptable to them. A couple of days before the January 10 anticipated closing date the buyers' agent and employee called Mr. Hawkins' office to determine the time of closing. He was informed that no closing had been scheduled. On January 10 the sellers went to their attorney's office to inquire as to the time of the closing and they too were informed that no closing had been scheduled. There was no closing. Thereafter the sellers made several inquiries of their attorney as to the closing date and were repeatedly informed that none had been scheduled. The buyers likewise called the attorney's office but were unable to contact him. Mr. Hawkins testified that he attempted to return the calls but was unsuccessful in contacting the buyers. However, on numerous occasions Mr. Boswell met Mr. Hawkins at a local restaurant which they both frequented. During at least one of those meetings in March or April of 1972 Mr. Boswell again asked Mr. Hawkins about the status of the release clauses and repeated his willingness to accept any plan desired by the sellers. Mr. Hawkins stated that he would look at the sketches again and see if he could come up with anything. Sometime after that conversation the sellers instructed Mr. Hawkins to return the $1,000 escrow deposit and to rescind the contract. In April or May of 1972 Mr. Boswell called the attorney stating that he wanted to close the transaction on the original contract terms. The attorney at that time informed Mr. Boswell that he did not think that the sellers wanted to close and suggested a meeting between the buyers and sellers in his office. A meeting was in fact held in Mr. Hawkins' office, attended by Mr. Boswell, a Mr. Cranston (Boswell's agent and employee), Mr. Dickinson, and, of course, the attorney. It became apparent at that meeting that the sellers would not agree to close the transaction on any terms. The buyers thereupon retained their own attorney, writing to the sellers a demand letter requesting a closing in accordance with the terms of the purchase and sell agreement. A second letter was also sent to the sellers' attorney, Mr. Hawkins, which, however, did not result in a closing. The buyers thereupon filed suit seeking specific performance.
Trial was held before the court, resulting in entry of the aforementioned final judgment from whence this appeal is taken.
Appellees cite numerous authorities to the effect that a contract may be abandoned by the parties and that once abandoned it may not be specifically enforced. We have no quarrel with that principle of law but we are unable to fathom its application sub judice. It is obvious that at all times attorney Hawkins represented the sellers. The buyers quite properly communicated through him. The fact that the buyers requested attorney Hawkins to handle the entire transaction, rather than their obtaining another attorney, is in keeping with ordinary custom and practice incident to the closing of real estate transactions, and did not change the relationship between the sellers and their attorney. There is not one iota of evidence that the buyers ever intended to abandon, rescind or change the contract. Although they offered *63 to close on terms different from those set forth in the contract they never indicated that they were unwilling to close in strict compliance with the terms of the contract. It clearly was not the fault of the buyers that the transaction was not closed on January 10 as anticipated by the contract. The evidence clearly reveals that it was the sellers' attorney, not the buyers, who was responsible for the inordinate delay. It is uncontradicted that the buyers told Mr. Hawkins that they would close on any terms satisfactory to the sellers and he replied that he would try to "work something up". That was never done.
Reversed and remanded for further proceedings consistent herewith.
SPECTOR, Acting C.J., and McCORD, J., concur.