729 So.2d 603 (1998)
In re MEDICAL REVIEW PANEL FOR the CLAIM OF Derek DEDE, et al.
No. 98-C-2248.
Court of Appeal of Louisiana, Fourth Circuit.
December 2, 1998.
Rehearing Denied January 29, 1999.
Writ Denied April 9, 1999.
*604 Gregory C. Weiss, Deborah, F. Malveaux, Weiss & Eason, L.L.P., New Orleans, for Defendants-Relators.
Joseph W. Thomas, New Orleans, for Plaintiffs-Respondents.
Before SCHOTT, C.J., and BYRNES, LOBRANO, LANDRIEU and McKAY, JJ.
SCHOTT, Chief Judge.
On the application of defendants, Tulane University Medical Center (TUMC) and Drs. Michael Kiernan, Ralph Corsetti and Rodney Steiner, we grant certiorari to review a judgment of the trial court overruling defendants' exception of prescription.
Pursuant to the Medical Malpractice Act, La. R.S. 40:1299.41, et seq., plaintiffs, Derek Dede and Lisa Washington Savoy, filed a medical malpractice claim with the Louisiana Patients' Compensation fund, alleging that the defendants committed medical malpractice during the placement of a central line in their infant daughter, Destany Washington. Following a premature birth and multiple hospitalizations, Destany was admitted to TUMC on April 20, 1994, with respiratory problems. On May 6, 1994, the TUMC physicians inserted a left femoral central line to provide I.V. access. On May 15, 1994, the physicians discovered that the central line had eroded through the wall of a blood vessel causing fluids to infuse in an area around Destany's spinal cord. The I.V. fluids caused a chemical shock, rendering Destany quadriplegic. On that same day, Dr. Steiner summoned Mrs. Savoy to the hospital and informed her of the complications. According to Mrs. Savoy, she questioned Dr. Steiner as to "whether anybody had done anything wrong," and he told her that nobody had done anything wrong and that it was the result of "complications."
Mrs. Savoy contacted her attorney shortly after Destany became paralyzed. On June 24, 1994, the attorney requested a copy of Destany's medical records from TUMC. TUMC informed him, in writing, that it could not release the records until Destany was released from the hospital and instructed him to request the records when she was discharged.
TUMC discharged Destany on August 10, 1994, at which time she was transferred to Southdown Care Center, a nursing home in Houma. Plaintiffs' attorney never re-requested Destany's TUMC records. On September 23, 1994, Destany was admitted briefly at Children's Hospital in New Orleans for cardiopulmonary related problems. She died at Terrebone General Hospital on October 18, 1994, after a cardiac arrest. Plaintiffs filed their medical malpractice and wrongful death claims with the Patients' Compensation *605 Fund on October 20, 1995, a year and two days after the child died.
Defendants filed an exception of prescription, arguing that the plaintiffs' claims were prescribed pursuant to La. R.S. 9:5628. They contend that the prescriptive period commenced to run no later than May 15, 1994, the date the plaintiffs learned of their daughter's paralysis. In opposition to the exception, plaintiffs argued that they discovered the alleged malpractice when they reviewed a copy of Destany's medical records from Children's Hospital in November 1994.
The trial court held a hearing on the defendants' exception of prescription, at which Dr. Steiner and Mrs. Savoy testified. The trial judge's findings of facts and conclusions were set forth in written reasons for judgment, which read in part:
The defendants informed the child's parents on May 15, 1994, that Destany suffered a well-known complication of placing a central line that caused her quadriplegia. According to Lisa Washington's testimony the defendants specifically told her that Destany's condition was not caused by anything the defendants did wrong or by medical malpractice.
The defendants called Dr. Rodney Steiner as a witness at the hearing. Dr. Steiner testified that he did {not} recall telling Ms. Washington that Destany's condition was not the result of medical malpractice. Dr. Steiner admitted, however, that if Lisa Washington asked him whether Destany's condition was the result of medical malpractice, he would have told her it was not the result of medical malpractice, but a result of a known complication of placing a central line.
Ms. Washington testified that she accepted what she was told by the defendants but had an apprehension that something was wrong. The plaintiffs asked their attorney to obtain the records to verify what they were told by the defendants.
The trial judge cited Griffin v. Kinberger, 507 So.2d 821 (La.1987) for the undisputed proposition that under La. R.S. 9:5628 the question to be addressed was when the plaintiffs possessed actual or constructive knowledge of facts indicating that their child was a victim of a tort. The judge acknowledged that the plaintiffs certainly had a reasonable apprehension that something was wrong when Dr. Steiner informed Mrs. Savoy that Destany was a quadriplegic as a result of a well known complication of placing a central line. However, she further noted that a mere apprehension that something was done wrong is not enough to commence the running of prescription, citing Beth Israel v. Bartley, Inc. 579 So.2d 1066, 1072 (La.App. 4 Cir.1991). In denying defendants' exception, the trial judge concluded that plaintiffs' claim filed on October 20, 1995, was timely under La. R.S. 9:5628 because the plaintiffs first had knowledge that their child may have been a victim of medical malpractice in November 1994 when their attorney received a copy of the Children's Hospital records.[1] We disagree with the trial judge's conclusion and reverse.
La. R.S. 9:5628 provides the prescriptive periods for filing a medical malpractice action. The statute provides in relevant part:
A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect. (emphasis added)
Prescription commences and continues when a plaintiff obtains actual or constructive *606 knowledge of facts indicating to a reasonable person that he or she is a victim of a tort. Griffin v. Kinberger, supra; White v. Willis-Knighton Medical Center, 25,575 (La.App. 2 Cir. 2/23/94), 632 So.2d 1198. The test for determining sufficient knowledge is:
[W]hether the cause of action was known or reasonably `knowable' by plaintiff. ... When a plaintiff has knowledge of facts strongly suggestive that the untoward condition or result may be the result of improper treatment and there is no effort by the health care providers to mislead or cover up information which is available to plaintiff through inquiry or professional medical or legal advice, then the facts and cause of action are reasonably knowable to plaintiff.
Gore v. Snider, 590 So.2d 677, 680 (La.App. 3 Cir.1991)[quoting Harlan v. Roberts, 565 So.2d 482, 486 (La.App. 2 Cir.1990), writ denied, 567 So.2d 1126 (La.1990)]. It is not necessary that a lawyer or doctor tell the plaintiff that he or she has a medical malpractice claim before prescription begins to run; rather, a court may find that a plaintiff had knowledge of the existence of a medical malpractice cause of action based on the plaintiffs background, intelligence, response to symptoms, and other relevant circumstances. Abrams v. Herbert, 590 So.2d 1291, 1296 (La.App. 1 Cir.1991).
In this case, it is apparent from the reasons for judgment that the trial judge believed that Dr. Steiner may have misled Mrs. Savoy when he told her that Destany's paralysis was a result of complications rather than a possible act of malpractice. Yet, aside from giving Mrs. Savoy his opinion that there was no wrong doing on the part of TUMC, there is nothing in the testimony to support a finding that Dr. Steiner's explanation was false. When asked how he explained the matter to Destany's family, Dr. Steiner testified, "I explained to them that the catheter was being used to support Destany where she was getting all of her IV fluids and all of her IV medications had burst through the vein in which it had been placed and that intravenous fluids and medications had gotten out of the blood vessel and into the space around the spinal cord and that this had resulted in the neurological changes that we had seen." When asked if he felt Mrs. Savoy understood the procedure that had occurred to her daughter, he replied, "Yes. As I said, I explained it in very plain, simple words that the fluids were bursting through the blood vessel and administering material around the spinal cord resulting in her paralysis."
In Claim of Aron, 96-2665 (La.App. 4 Cir. 5/21/97), 695 So.2d 553, we rejected the idea that a patient had to be informed by an attorney or physician of possible malpractice before prescription begins to run. In Aron, the plaintiff underwent two surgical procedures, on May 29, 1991 and May 31, 1991. After recovery, the plaintiff complained of facial weakness, double vision, tinnitus and right-sided neurological deficits related to the surgery. On June 2, 1995, the plaintiff filed a complaint with the Patients' Compensation Fund. Defendants filed an exception of prescription and argued that prescription began to run the date of surgery, May 29, 1991. The plaintiff maintained that prescription began to run on August 17, 1994, the date her physician reviewed her hospital records and specifically stated that the surgery was performed improperly and, because the suit was filed within one year of that date, it was timely. In upholding the trial court's judgment sustaining the exception of prescription, we noted that following surgery, recovery and rehabilitation, the plaintiff sought treatment for the neurological deficits. In March of 1992, a physician reviewed her record and opined that the surgeries left her with some residual neurological deficits. Again, in October 1993 and August 1994, two other physicians concluded the same. We held that the plaintiff had sufficient information to excite attention and prompt further inquiry such that prescription began to run right after the surgery.
Our review of the evidence indicates that Mrs. Savoy's testimony does not support the trial judge's finding that prescription had not run prior to November 1994 because the plaintiff had only a mere apprehension that medical malpractice had occurred. At the hearing, Mrs. Savoy admitted that she believed medical malpractice might have taken place on May 15, 1994, the date Dr. Steiner *607 informed her of Destany's paralysis. She testified that although Dr. Steiner told her this was a complication of the procedure and nobody had done anything wrong, she did not believe him. Based on her suspicions, she met with an attorney and asked him to obtain and review Destany's medical records. On cross-examination, Mrs. Savoy specifically testified that between May 15, 1994 and October 18, 1994, the date of Destany's death, she never doubted that malpractice had occurred.
Nonetheless, the plaintiffs argue that the doctrine of contra non valentem agere nulla currit praescripto is applicable to this case and suspends the prescriptive toll of La. R.S. 9:5628.
The Louisiana Supreme Court set forth four exceptional circumstances in which prescription should be suspended. See Corsey v. State, Through Dept. of Corrections, 375 So.2d 1319 (La.1979). The two which are applicable to the present case are: (3) Where the debtor himself has done some act effectively to prevent the creditor from availing himself of his cause of action; and (4) Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Id. at 1321-22.
Prescription will be suspended only where the defendant actively engages in a course of action designed to prevent a plaintiff from acting. That is, the defendant's conduct must be more than a mere neglect or a misstatement, it must constitute a fraud, a deliberate concealment or a breach of duty to disclose. In re Medical Review Panel for Claim of Lionel Milton, 593 So.2d 795 (La. App. 4 Cir.1992).
Notwithstanding Mrs. Savoy's admission that Dr. Steiner informed her of her daughter's paralysis on May 15, 1994 and she suspected medical malpractice at that time, the trial judge concluded that in November 1994, when their attorney reviewed Destany's Children's Hospital discharge summary, the plaintiffs first had knowledge that Dr. Steiner's explanation was not completely true and that Destany may have been a medical malpractice victim. In reviewing the Children's Hospital discharge summary, the trial judge found that "the description of what happened to Destany during her TUMC hospitalization differed sharply from what the plaintiffs were told by the defendants." Unlike the trial judge, our review of the evidence does not support this finding.
The Children's Hospital discharge summary merely confirms Dr. Steiner's explanation to Mrs. Savoy and does not contain any new information that was not available in TUMC's medical records. For instance, the Children's Hospital discharge summary refers to Destany's stay at TUMC and states:
During this hospital course, the patient appeared septic according to the [TUMC] Discharge Summary, and IV antibiotics were started from the femoral line. At some point during this time, the line was noted to flush, but would not draw back. At that time, a fluoroscopy study was done, which showed that the catheter was in the epidural space.
This same language is repeated throughout Destany's TUMC medical records, indicating that defendants did not conceal the fact that the catheter was in the epidural space. Furthermore, plaintiffs have not alleged fraud nor have they alleged that the defendants acted with intent to deliberately withhold information from them. To the contrary, TUMC informed plaintiffs' attorney in writing that Destany's TUMC medical records would be readily available for his review on the date of Destany's discharge from TUMC and he should request them at that time. Although Destany was discharged on August 10, 1994, plaintiffs' attorney did not re-request the medical records. In view of the evidence and testimony before us, we find the doctrine of contra non valentum is not applicable to this case.
In Taylor v. Giddens, 618 So.2d 834, 842 (La.1993), the Louisiana Supreme Court concluded that a survival action in a medical malpractice case is governed by the prescriptive period contained in La. R.S. 9:5628(A), however the prescriptive period of a wrongful death action is governed by La. C.C. art. 3492 which provides for a one year prescriptive period from the date of the decedent's death.
*608 Clearly, the plaintiffs had sufficient information to excite their attention and prompt further inquiry into a possible medical malpractice action on May 15, 1994. Thus, prescription on their survival action based on medical malpractice commenced on May 15, 1994, and prescribed May 15, 1995. Similarly, prescription on the wrongful death action began on October 18, 1994, the date of Destany's death, and prescribed on October 18, 1995, two days before the plaintiffs filed their complaint with the Patients' Compensation Fund. In view of this, we find the trial court erred in denying the defendants' exception of prescription.
Accordingly, the judgment of the trial court overruling defendants' exception of prescription is reversed. The exception of prescription is sustained and plaintiffs' claims against defendants are dismissed.
REVERSED AND RENDERED.
McKAY, J., dissents.
McKAY, J., dissenting.
I respectfully dissent with the majority opinion in this case. It is my opinion that there were sufficient grounds for the trial court to deny defendant's exception of prescription. Whether a particular plaintiff knows of the existence of his medical malpractice cause of action at a particular time must be decided based on the facts of the case. In the instant case the decedent's mother stated that she "believed" as early as May 15, 1995 that her daughter's injuries were a result of medical malpractice. However, the decedent's parents did not review her medical records until November 1994, the month following her death. What constitutes mere apprehension and what constitutes sufficient information to commence the running of prescription is basically a fact question to be decided by the trial court. The trial court found that plaintiffs action had not prescribed. In my opinion that finding was not manifestly erroneous. Therefore, I would affirm the trial court's ruling denying defendant's exception of prescription.
NOTES
[1] The trial court did not address the prescription issue in terms of the wrongful death claim.