PAUL A. BONIN, Judge.
 

 | tThis is a medical malpractice claim. The trial court found that the patient’s claim against the named healthcare providers was prescribed and dismissed the patient’s claim with prejudice. For the reasons which follow, we affirm the trial court’s judgment.
 

 I
 

 Dr. Luis Linares treated Terri Marino’s spinal cancer in July 2005 with radiation therapy. Earlier in 2005 he had treated her breast cancer with radiation therapy. In July 2006, while shopping, Ms. Marino experienced an onset of tingling and numbness around her thighs, knees, calves and feet. Over the next several days she could not move her leg. It was the beginning of paralysis. She went to the emergency room at East Jefferson General Hospital on July 10, 2006. There she was examined by several physicians who suspected that her symptoms appeared to be caused by transverse myelitis or TM. One possible cause of TM is |2spinal radiation therapy. Those physicians informed her that radiation treatment is one among several causes of TM. None of those physicians stated that the spinal radiation treatment she received from Dr. Linares may have violated the standard of care owed to her by Dr. Linares.
 

 Ms. Marino then sought out Dr. Linares, whose practice location had changed on account of the storm in 2005. She sought Dr. Linares not for treatment but for information about her prior radiation therapy. Dr. Linares advised Ms. Marino that he was only able to locate the records for the radiation treatment to her breast; he was unable to locate the records from spinal radiation treatment. Ms. Marino thought that this was curious. According to Ms. Marino, Dr. Linares was unable to express any opinion about whether the doses used in her spinal radiation treatment may have caused TM, but he did inform her that radiation therapy is one of the causes of TM. Ms. Marino claims that she was never informed of the possibilities of TM as a result of radiation therapy and
 
 *299
 
 never gave informed consent to the radiation therapy. Dr. Linares and Tenet HealthSystem Memorial Medical Center, Inc. (“Tenet”)
 
 [1]
 
 are unable to produce any document showing that Ms. Marino gave her consent to the radiation therapy with the information that it might cause TM.
 
 [2]
 
 Ms. Marino’s discussion with Dr. Linares took place on July 19, 2006.
 

 II
 

 On May 8, 2008, Ms. Marino filed
 
 [3]
 
 her request for a medical review panel against Dr. Linares and Tenet. Dr. Linares and Tenet filed an exception of ^prescription in the district court.
 
 [4]
 

 See
 
 La. R.S. 40:1299.47(B)(2)(a) and La. C.C.P. art. 927 A(l). After considering the evidence offered by the parties, the trial court found that Ms. Marino’s malpractice claim was prescribed and dismissed it with prejudice.
 
 [5]
 

 See
 
 La. C.C.P. arts. 929 A, 931, 934, 1673, and La. R.S. 40:1299.47(B)(2)(b).
 

 The prescriptive period
 
 [6]
 
 for this medical malpractice claim is set forth in La. R.S. 9:5628 A:
 

 No action for damages for injury or death against any physician, ... [or] hospital, ... as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought
 
 unless filed
 
 within one year from the date of the alleged act, omission, or neglect, or
 
 within one year from the date of discovery of the alleged act, omission, or neglect;
 
 however, even as to claims filed within one year from the date of discovery, in all events such claims shall be filed within a period of three years from the date of the alleged act, omission, or neglect, (emphasis supplied)
 

 The parties agree that, under the facts of this case, “the date of discovery” is the trigger. Dr. Linares and Tenet contend that July 19, 2006 is that date and, consequently, the filing of the claim on May 8, 2008, more than one year later, is untimely and prescribed. Ms. Marino counters that she has yet to “discover” facts sufficient to establish malpractice, but that her filing was timely in that it was within three years of Dr. Linares’ alleged act of malpractice in July 2005.
 

 The trial court found that the date of discovery was July of 2006.
 
 [7]
 
 In reviewing a peremptory exception of prescription, a reviewing court will not |4disturb the factual conclusions of the trial court unless they are manifestly erroneous.
 
 Davis v. Hibernia National Bank,
 
 98-1164, p. 2 (La.App. 4 Cir. 2/24/99), 732
 
 *300
 
 So.2d 61, 63. We review the trial court’s ruling under the manifest error or clearly wrong standard, in which the trial court will not be reversed in the absence of clear error. The relevant issue in a manifest error inquiry is not whether the finder of fact was right or wrong, but whether its decision was a reasonable one.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989);
 
 Turnbull v. Thensted,
 
 99-0025, p. 5 (La.App. 4 Cir. 3/1/00), 757 So.2d 145, 149.
 

 An action for recovery for medical malpractice shall not be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission or neglect. La. R.S. 9:5628 A. If the action is prescribed on its face, the plaintiff bears the burden of showing that the action has not prescribed.
 
 LeBreton v. Rabito,
 
 97-2221, p. 6 (La.7/8/98), 714 So.2d 1226, 1228 (citing
 
 Wimberly v. Gatch,
 
 93-2361 (La.4/11/94), 635 So.2d 206). For the reasons that follow, we find that the trial court was reasonable in finding that Ms. Marino discovered the alleged act, omission, or neglect in July of 2006, and the trial court was correct in finding that Ms. Marino did not file her claim for medical review panel within one year from that discovery.
 

 Ill
 

 The dispute centers on what constitutes “discovery” by a patient under La. R.S. 9:5628 A. Justice Knoll, writing for a unanimous Supreme Court, set out the basic test in
 
 Campo v. Correa,
 
 01-2707, p. 12 (La.6/21/02), 828 So.2d 502, 510-511:
 

 | ¿Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is a victim of a tort ... Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start the running of prescription.
 

 According to this standard, the plaintiffs mere apprehension that something may be wrong is insufficient for prescription to begin running; the plaintiffs knowledge must rise to the level of constructive knowledge: either she knew or should have known through the exercise of reasonable diligence that her problem may have been caused by an act of malpractice. Prescription will not run if it was reasonable for the plaintiff not to recognize that the condition might be related to the treatment. In such an inquiry, the ultimate issue is the
 
 reasonableness
 
 of the plaintiffs action or inaction, in light of her education, intelligence, the severity of the symptoms, and the nature of the defendant’s conduct.
 
 Id.
 
 at 511 (citing
 
 Griffin v. Kinberger,
 
 507 So.2d 821 (La.1987)).
 

 Prescription commences and continues when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is a victim of a tort.
 
 Griffin v. Kinberger,
 
 supra. The test for determining a plaintiffs knowledge turns on her reasonableness, whether a cause of action was reasonably “knowable” by a plaintiff.
 
 Claim of Dede,
 
 98-2248, p. 4 (La.App. 4 Cir. 12/2/98), 729 So.2d 603, 606. The plaintiff need not be informed by an attorney or physician of the possibility of malpractice before prescription begins to run.
 
 Claim of Aron,
 
 96-2665 (La.App. 4 Cir. 5/21/97), 695 So.2d 553, 556.
 

 | ¿Ms. Marino underwent radiation therapy on her spine in July of 2005. In
 
 *301
 
 July of 2006, she experienced the beginnings of paralysis while waiting in line at Wal-Mart. By July 10, 2006, Ms. Marino’s leg numbness had worsened, and she checked in to East Jefferson Hospital where she stayed for testing for several days. While hospitalized, Ms. Marino learned from both Dr. Fuqua and Dr. Mel-cher that radiation therapy was a possible cause of this paralysis. After learning of this possible relationship between her past radiation and present paralysis, she sought further information from her previous doctor, Dr. Linares. Dr. Linares also informed Ms. Marino that her spinal radiation therapy, among other things,
 
 [8]
 
 could lead to transverse myelitis. Dr. Linares told Ms. Marino that he had her breast radiation records, but he could not find the records of her spinal radiation treatment. Ms. Marino, in her deposition testimony, noted that she thought this was “kind of odd.” The trial judge found that July of 2006 was the trigger date for the one-year prescription period set forth in R.S. 9:5628 A.
 

 In
 
 Griffin v. Kinberger,
 
 supra at 823, the Louisiana Supreme Court noted that prescription will not run merely because a victim is aware that an undesirable condition developed at some point in time after the medical treatment. Prescription does not run against one who is ignorant of the facts upon which a cause of action is based, as long as that ignorance is not willful, negligent, or unreasonable.
 
 Id.
 
 Prescription will, however, begin to run when it becomes unreasonable for the victim not to recognize that the undesirable condition is treatment-related.
 
 Id.
 
 at 824. Ms. Mari-no learned in July of 2006 that her radiation treatment to the thoracic vertebra of July 2005 was one possible cause of TM. This information — bolstered 17by her inquiry with Dr. Linares on July 19, 2009, and her belief that she was not informed of the risks associated with radiation — gave rise to constructive knowledge that Ms. Marino may have been the victim of a tort. This knowledge, as the trial judge correctly found, was sufficient to commence the running of prescription.
 
 See Campo,
 
 supra at 511. When Ms. Marino was told that radiation therapy was one of the causes of her paralysis, she noted her concern, reflected in her deposition testimony: “It [radiation therapy] was the only thing I had to go on that I knew I had.” This demonstrates knowledge that excited her attention and put her on guard to call for inquiry sufficient to start the prescriptive period. Ms. Marino never gained any further knowledge about her condition and its connection to her treatment after 2006; she admits that the concern that she had about the possible relationship between radiation and TM was the same in 2008 as it was at the time of her diagnosis in 2006. Moreover, she has never identified what she might have learned during that period that would more clearly demonstrate that her condition was related to medical malpractice. It is true that, due to the loss of some of her medical records, Ms. Marino did not have conclusive proof that her TM was related to an act of malpractice when she was diagnosed in 2006. However, her belief that she had not given informed consent, coupled with the severity of her condition and her knowledge of spinal radiation’s connection to TM, gave rise to constructive discovery sufficient to commence the running of prescription against her. Because Ms. Marino’s date of discovery was over a year prior to her filing for request of medical review panel, her claim
 
 *302
 
 has prescribed. The trial court was reasonable in finding that Ms. Marino had constructive knowledge in July of 2006 that she may be the victim of a tort, and the trial court was correct in sustaining Dr. Linares and Tenet’s exception of prescription.
 

 _kiv
 

 In her claim, Ms. Marino also asserts that she was never informed that radiation therapy was associated with the risk of TM, a claim under the Louisiana Informed Consent Law that has likewise prescribed.
 
 [9]
 
 Dr. Linares asserts that the records pertaining to Ms. Marino’s spinal radiation — including any written informed consent she may have given — were lost in Hurricane Katrina. Ms. Marino asserts that she was never told of the risk of paralysis. When Ms. Marino learned of her diagnosis of TM and its possible relationship to radiation therapy in July 2006, she would have had actual knowledge that she had not been warned of this risk and that she may be a victim of a tort. Her claim on the issue of informed consent— having been filed in March 2008 (over a year after gaining this knowledge) has prescribed.
 

 Ms. Marino’s deposition testimony reflects that she does not recall ever being consulted about the risks for any of her treatments; she did not recall discussing the possible risks of her lumpectomy surgery, chemotherapy, or her radiation therapies. The records of Ms. Marino’s spinal radiation therapy have been missing since Hurricane Katrina, including any written informed consent she may have given as well as any record of the radiation administered to her spine. As Ms. Marino contends that she was never told prior to her spinal radiation that such treatment could cause TM, this should have further compounded her curiosity upon learning of her TM diagnosis in July of 2006. During and after this diagnosis, Ms. |9Marino was experiencing severe numbness in her legs, and she became paralyzed shortly thereafter. The severity of Ms. Marino’s resultant injury underscores the unreasonableness of her inaction.
 
 See, e.g., Cadogan v. McClanahan,
 
 03-0603, p. 9 (La.App. 4 Cir. 11/12/03), 861 So.2d 250, 256 (emphasis added) (“The ultimate issue is the reasonableness of the patient’s action or inaction, in light of [her] education, intelligence, the
 
 seventy of the symptoms,
 
 and the nature of the defendant’s conduct.”). She was informed by multiple physicians that her spinal radiation therapy could be the cause. Believing she had never been warned of the risk of severe paralysis, Ms. Marino was then on alert; her attention was excited and she was put on her guard sufficient to commence the running of prescription. She would have needed to file her request for a medical review panel within one year to overcome the exception of prescription, or she might have pointed to some additional piece of information that she discovered within the year prior to filing that elucidated the basis of her malpractice claim, but she did not do so. Ms. Marino has not asserted that she discovered any new information related to her malpractice claim since the time of her diagnosis in 2006, and her request was not filed until March of 2008 — beyond the one-year prescriptive period for medical mal
 
 *303
 
 practice claims. Accordingly, the district court’s finding that Ms. Marino’s “date of discovery” was in July of 2006 was reasonable, and its decision to sustain Dr. Li-nares and Tenet’s exception of prescription is correct. The ruling of the district court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Tenet provides radiation facilities and technicians.
 

 [2]
 

 . TM, when caused by radiation therapy, is sometimes referred to as radiation myelitis.
 

 [3]
 

 . The request is filed with the Louisiana Division of Administration pursuant to La. R.S. 40:1299.42
 
 et seq.
 

 [4]
 

 . La. C.C. art. 3452 provides that ”[pr]escription must be pleaded. Courts may not supply a plea of prescription.” An earlier exception of prescription had been denied by the trial court to afford the parties additional time to conduct discovery. Ms. Marino has filed her request for medical review of her claim, which acts to suspend the prescriptive period.
 
 See
 
 La. R.S. 40:1299.47(A)(2)(a).
 

 [5]
 

 . The issue of the malpractice of Dr. Linares or of Tenet had not been submitted to the medical review panel at the time of the ruling on the exception.
 

 [6]
 

 . La. C.C. art. 3447 slates: “Liberative prescriptive is a mode of barring actions as a result of inaction for a period of time."
 

 [7]
 

 . The trial judge stated that she had “read [Ms. Marino’s] deposition in its entirety to get the full context of what she knew and when she knew it. And unfortunately, she admitted she knew in July of 2006.”
 

 [8]
 

 . The parties refer to "five possible causes" of TM without clearly describing the other possible causes. A review of the record reveals four: virus, vasculitis, radiation therapy, and a chipped bone moving into the spine.
 

 [9]
 

 . The Louisiana Informed Consent Law requires disclosure of the nature and purpose of a medical or surgical procedure, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or function of any organ or limb, or disfiguring scars. La. R.S. 40:1299.40 A. However, because the claim has prescribed, we do not review it under the informed consent statute or the standards enumerated in
 
 Hondroulis v. Schuhmacher,
 
 553 So.2d 398 (La.1988).