30 So.3d 251 (2010)
In re MEDICAL REVIEW PANEL PROCEEDINGS OF Milton BERRY.
No. 2009-CA-0752.
Court of Appeal of Louisiana, Fourth Circuit.
January 27, 2010.
*252 Terry L. Bonnie, Terry L. Bonnie, APLC, Baton Rouge, LA, for Appellant, Milton Berry.
Peter E. Sperling, James P. Waldron, Frilot L.L.C., New Orleans, LA, for Tulane University Hospital and Clinic.
Bryan J. Knight, Stewart E. Niles, Jr., Michelle A. Bourque, Niles Bourque Fontana & Rice, L.L.C., New Orleans, LA, for Appellee, Dr. James Butler.
*253 (Court composed of Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR., Judge EDWIN A. LOMBARD, Judge PAUL A. BONIN).
TERRI F. LOVE, Judge.
Plaintiff/Appellant, Milton Berry, has appealed the trial court's judgment granting an exception of prescription. Defendants, Tulane University Hospital and Clinic and Dr. James Butler filed exceptions of prescription, asserting that the appellant's claims had prescribed. The trial court granted their exceptions and it is from those judgments appellant appeals. We find sufficient support for the trial court's grant of the exceptions and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Milton Berry ("Mr. Berry"), Plaintiff/Appellant, filed a request for review with the Louisiana Patient's Compensation Fund (PCF), alleging medical malpractice in the treatment of his right knee and naming as defendants, Ochsner Clinic Limited Liability at New Orleans, Infusion Partners-New Orleans, Dr. James Butler, Dr. Sunii, Dr. Witzig, Dr. Laundry,[1] Dr. Garcia, and Tulane University Hospital and Clinic.
Mr. Berry alleged medical malpractice as a result of injuries sustained from a series of twelve (12) unsuccessful right knee surgeries, spanning a period of six (6) years as follows:
Mr. Berry's treatment began in August of 1999, when Mr. Berry presented to Dr. Butler at Tulane University Hospital with complaints of pain in his right knee that occurred when walking and ascending or descending stairs. Dr. Butler examined Mr. Berry and conducted testing, after which he determined that Mr. Berry's knee was rubbing bone against bone. Dr. Butler concluded that a total knee replacement was necessary. The knee replacement was to increase flexion to 80 degrees and eliminate symptoms of pain.
In early 2000, Dr. Butler performed a total knee replacement, installing a prosthetic right knee. Mr. Berry then began physical therapy and participated in other routine therapy while an in-patient and as an out-patient. However, Mr. Berry continued to have pain and limitations in his knee, and a second knee surgery was also performed in early 2000. After the second knee surgery, Dr. Butler informed Mr. Berry that the problem arose from scar tissue and was told that one-in-a-million legs don't bend correctly.
Also, in March 2000, a third knee surgery was performed, resulting in scar tissue to the extent that the only way to correct it was to perform a fourth knee surgery in December 2000. In August 2001, a fifth knee surgery was performed to loosen screws in the knee in an attempt to achieve a 90-degree bend at the knee. However, after surgery, only a 70-degree bend was achieved.
Dr. Butler later performed a sixth and seventh knee surgery. After these surgeries, Mr. Berry's knee began to swell. In March 2002, Dr. Butler refused to see Mr. Berry. However, after Mr. Berry made demands, Dr. Butler saw Mr. Berry and told him that a bone was preventing the knee from bending at an 85-90-degree angle.
In the summer of 2004, Dr. Butler then performed an eighth knee surgery, during *254 which he cut more bone. Also in late 2004, a ninth knee surgery was performed, wherein Dr. Butler removed more bone and scar tissue. Mr. Berry's right leg began to turn blue after this ninth surgery.
Dr. Butler again refused to see Mr. Berry. During this timeframe, Mr. Berry's leg became infected and pus protruded from his leg upon touching. These problems persisted in 2004 and 2005, and Mr. Berry continued having the same problems with his knee.
Mr. Berry sought physical therapy, at which point a physical therapist advised Mr. Berry that he needed to see his doctor regarding worsening protrusion in the knee. In May 2005, a tenth surgery was performed to drain the infection from the knee and to clean and treat the prosthesis to fight detected bacteria. In December 2005, an eleventh and twelfth surgery were performed on Mr. Berry to insert cement in the knee and treat bacteria.
At the time of his original claim, Mr. Berry claimed that he was continually experiencing complications with his knee, on-going infection, and treatment. Mr. Berry averred that the defendants/appellees made mistakes during his surgical treatment process and unsuccessfully attempted to correct those mistakes with subsequent surgeries, which resulted in the appellant's original claim of medical malpractice. After six (6) years of treatment, Mr. Berry had a severely infected knee, needed removal of the original prosthesis to treat the infection, as well as the removal of bone to treat the infection, and suffered from continuing infection, pain and restrictions in his right knee. He also claimed a psychological component of injury, which he maintained arose as a result of the defendants' negligent treatment.
Mr. Berry's original claim of medical malpractice was dated September 19, 2007; a supplemental request for leave to amend that claim was made on the same date, and was received by the PCF on September 21, 2007.
On September 28, 2007, the PCF acknowledged receipt of Mr. Berry's September 19, 2007 filing by notice to Mr. Berry's counsel, and the PCF requested that a specific description of alleged malpractice as to each named defendant and complete names of healthcare providers be provided within 10 days of the date of the notice. The PCF also advised Mr. Berry that Act 961 of the 2003 Regular Session requires a filing fee of $100 per named, qualified healthcare provider; however the notice stated that qualification could not be yet determined without the supplemental information.
Mr. Berry filed an Amended Claim of Malpractice with the PCF on October 11, 2007, including the requested supplemental information, again naming Dr. James Butler and adding Tulane University Hospital and Clinic ("TUHC") as the defendants. Therein, Mr. Berry claimed that the care and treatment provided by Dr. Butler and TUHC during these procedures constituted negligence and a breach of the standard of care.
On January 8, 2008, the PCF informed Mr. Berry's counsel that his complaint was considered invalid and without effect due to his failure to timely remit the appropriate filing fee. This notice stated that previously, on October 22, 2007, the PCF advised Mr. Berry's counsel that he had 45 days to submit the requisite filing fee, however no such correspondence is contained in the record. On January 14, 2008, Plaintiff refiled the PCF complaint against Tulane University Hospital and Clinic ("TUHC") and Dr. Butler, reiterating the allegations contained in his October 11, 2007 PCF claim of medical malpractice.
*255 In response, the defendants filed Exceptions of Prescription, based on Mr. Berry's October 2007 PCF complaint being prescribed on its face as it was filed more than one year after the alleged negligent act(s) and the January 2008 complaint being filed more than one year after discovery of the act(s). The trial court granted the defendants' exceptions of Prescription and found Plaintiff's PCF Complaint was prescribed.

STANDARD OF REVIEW
"A court of appeal may not set aside a trial court's or a jury's finding of fact in absence of `manifest error' or unless it is `clearly wrong.'" Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Stobart v. State Through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993). The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Mart v. Hill, 505 So.2d 1120,1127 (La.1987); Rosell, supra; Stobart, supra. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell, supra; Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Stobart, supra.

PRESCRIPTION
The appellant assigns error to the trial court's failure to consider the mailing of his complaint to the PCF on September 19, 2007, and finding his claim was invalid and without effect due to his failure to submit the requisite filing fee.
In their exceptions of prescription, the appellees contended Mr. Berry's medical malpractice claims were prescribed as the last alleged act of malpractice occurred on an unspecified date in December 2005. They argue that the claims prescribed because Mr. Berry failed to file his PCF claim within one year of that date-by December 2006.
The appellant argues that the last date of malpractice was not December 2005; rather, "the date was extended much later due to the doctrines of contra non valentem and/or continuing tort." Mr. Berry attested that he did not discover the alleged malpractice until at least November 2006. Mr. Berry therefore argues that as his PCF claim was originally filed on September 19, 2007, it was timely filed within one year of his discovery of the alleged malpractice.
The appellees submit that even if plaintiff did not discover the alleged malpractice until November 2006, his January 14, 2008 PCF claim, filed after the PCF notified him that his original claim was invalid, is still untimely since it was not filed within one year of his discovery of the malpractice November 2007.
The trial court stated the following:
"Despite Plaintiff mailing his complaint to the PFC [sic] on September 19, 2007, his claim was rendered invalid and without effect based on his failure to submit the requisite filing fee. The Court finds that this fact, the failure to submit the requisite filing fee, is an undisputed fact.
The Court finds that the PFC [sic] complaint filed on January 14, 2008 is prescribed. Based on the Plaintiff's evidence, the latest date of the discovery of any alleged malpractice was in November 2006. As such, the PCF complaint should have been filed no later than November 30, 2007. The Medical Malpractice Act and Louisiana jurisprudence makes it clear that a PCF complaint *256 is not considered filed until the fee is paid. As such, the September 19, 2007 filing will not be considered for purposes of interrupting the prescriptive period. Therefore, the exception is granted."
The exception of prescription is a peremptory exception. La. C.C.P. art. 927. "[P]rescriptive statutes are strictly construed against prescription...." Carter v. Haygood, 04-0646, p. 10 (La.1/19/05), 892 So.2d 1261, 1268. If amendment of the petition can cure the basis for the peremptory exception, the trial court "shall order such amendment within the delay allowed by the court." La. C.C.P. art. 934. The exceptor bears the burden of proof at the trial of the peremptory exception. Spott v. Otis Elevator Co., 601 So.2d 1355, 1361 (La.1992). However, the burden shifts to the plaintiff if prescription is evident on the face of the pleadings. Williams v. Sewerage & Water Bd. of New Orleans, 611 So.2d 1383, 1386 (La.1993).
La. R.S. 9:5628 provides the prescriptive period for medical malpractice and reads, in pertinent part:
A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect. (Emphasis added)
La. R.S. 9:5628.
"Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." Campo v. Correa, 01-2707, pp. 11-12 (La.6/21/02), 828 So.2d 502, 510. Even if a plaintiff does not have actual knowledge entitling him to bring a suit, constructive knowledge that excites attention and puts the "injured party on guard and call for inquiry" is sufficient. Id. at p. 12, 828 So.2d at 510-11. "Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription." Id. at p. 12, 828 So.2d at 511.
Mere apprehension "that something is wrong is not sufficient to start prescription unless plaintiff knew or should have known by exercising reasonable diligence that his problem condition may have been caused by acts of malpractice." Gunter v. Plauche, 439 So.2d 437, 439 (La.1983). "[Prescription does not run as long as it was reasonable for the victim not to recognize that the condition may be related to the treatment." Griffin v. Kinberger, 507 So.2d 821, 823-24 (La.1987). However, "knowledge that an undesirable condition has developed ... after medical treatment does not equate to knowledge of everything to which inquiry might lead." Campo, 01-2707, p. 15, 828 So.2d at 512-13.
On September 19, 2007, Mr. Berry made a claim with the PCF for damages caused by medical malpractice; on this same date, Mr. Berry's counsel filed a request for leave to amend that claim. The original claim was against the following parties: Oschner Clinic Limited Liability at New Orleans, Infusion Partners-New *257 Orleans, Dr. James Butler, Dr. Sunii, Dr. Witzig, Dr. Laundry, and Dr. Garcia. Mr. Berry amended the claim of malpractice, listing Dr. Butler as a defendant and adding Tulane University Hospital and Clinic as a defendant.
On September, 28, 2007, the PCF sent a letter to Mr. Berry's attorney, advising that the request made on behalf of Mr. Berry for a medical review panel had been received, additional information needed to be provided, and a decision on which defendants were qualified "cannot be determined without this information." The letter also advised the attorney that, in accordance with Act No. 961 of the 2003 Regular Session, a filing fee of $100 "per named, qualified health care provider" must be remitted "within 45 days of the notice from this office that named providers are qualified."
At the hearing, the following exhibits were entered into evidence: the original claim of September 19, 2007; a letter of the same date requesting leave to amend the original claim; a letter of September 28, 2007, requesting additional information to determine qualification of healthcare providers, on which the filing fee assessment would be based; the amended claim of October 11, 2007; and the PCF's January 8, 2008 letter, notifying Mr. Berry's counsel that the claimant failed to remit the filing fee and therefore the claim was considered invalid and without effect as to Dr. Butler and Tulane University Hospital and Clinic.
The letter of January 8, 2008 referenced an October 22, 2007 advisement that the claimant had 45 days to remit filing fees in the amount of $200.00. The letter was addressed to Mr. Berry's counsel and states, "[o]n October 22, we advised you that ... you had 45 days to remit filing fees of $200.00, a physician's affidavit, or a forma pauperis ruling and that failure to comply with the provisions of the Act would render your request for review invalid and without effect as to Dr. James Butler and Tulane University Hospital and Clinic." The letter further states that "[w]e did not receive the filing fees, thus you have failed to comply within the time allowed; therefore the above-cited case is considered invalid and without effect as to Dr. James Butler and Tulane University Hospital and Clinic."
La. R.S. 40:1299.47(A)(1)(c), as amended by Act 961 of the 2003 Regular Session of the Louisiana Legislature, reads in relevant part as follows:
(c) A claimant shall have forty-five days from the mailing date of the confirmation of receipt of the request for review... to pay to the board [the oversight board of the Fund] a filing fee in the amount of one hundred dollars per named defendant qualified under this Part.
La. R.S. 40:1299.47(A)(1)(c).
The record before us does not contain the actual notice of which named providers were actually qualified and the amount of payment due within 45 days of the date of the notice. However, while the record does not contain the letter, counsel for the appellant concedes that he received such a letter.[2] Further, counsel maintains that the appellant failed to remit payment in the amount requested within 45 days of the date of the notice as requested in the letter.
This Court and others have recently reviewed a number of cases involving prescription based on a medical malpractice *258 claimant's failure to submit filing fees or evidence of waiver thereof within 45 days of the date such a notice. See, e.g., Golden v. Patient's Comp. Fund Oversight Bd., 40,801 (La.App. 2 Cir. 3/8/06), 924 So.2d 459, writ denied, 06-0837 (La.6/2/06), 929 So.2d 1261; In re Igwike, 06-0167 (La. App. 4 Cir. 5/23/07), 959 So.2d 562; Latiolais v. Jackson, 06-2403 (La.App. 1 Cir. 11/2/07), 979 So.2d 489; and Lane v. Patient's Comp. Fund Oversight Bd., 07-0150 (La.App. 1 Cir.2/27/08), 4 So.3d 802. The courts concluded that when a claimant does not remit payment or proof of waiver of filing fees within the 45-day time limit, that claimant's request for review of a medical malpractice claim is invalid and without effect.
The jurisprudence outlines the notification, qualification and payment remission process. In Igwike, the PCF sent a letter to Ms. Igwike's attorney in which the PCF advised the attorney that the request made on behalf of Ms. Igwike for a medical review panel had been received and that Memorial Medical Center and Dr. William F. Von Almen, II were both providers who were qualified under the Act. Igwike, 06-0167, p. 2, 959 So.2d at 563. The letter also advised the attorney that "[i]n accordance with Act No. 961 of the 2003 Regular Session, which amended La. R.S. 40:1299.47(A)(1)(c), effective August 15, 2003, a filing fee of $100 per qualified defendant is due within 45 days from the date of this notice." Id. A filing fee in the amount of $200.00 was requested, and the letter further stated that the filing fee could be waived only if certain documents were received by the Fund in lieu of the fee. Id. Specifically, Ms. Igwike was required to pay a filing fee, submit a physician's affidavit, or provide an in forma pauperis court ruling to the Fund within forty-five days of the mailing date of the notice. Id., p. 8, 959 So.2d at 566.
However, Ms. Igwike's in forma pauperis affidavit, which she sought to file in lieu of the required filing fee, was untimely received by the PCF. Id., pp. 8-9, 959 So.2d at 566. The court found that at earliest, Ms. Igwike sent the affidavit on the 45th day, such that it could not have been received within the applicable time period. Id. Therefore, the court determined that Ms. Igwike's request for a medical review panel was without effect. Id., p. 9, 959 So.2d at 566.
Like Igwike, the trial court found that Mr. Berry's request for a medical review panel was invalid and without effect. Mr. Berry attested that latest date of the discovery of any alleged malpractice was in November 2006. Given that, the PCF complaint was to be filed by November 30, 2007. Mr. Berry's subsequent January 14, 2008 complaint, filed after notification that his September 19, 2007 complaint was invalid, did not cure the prescription defect that arose by his failure to timely submit the filing fee as requested by the PCF. We therefore find no error in the trial court's finding that Mr. Berry's request for a medical review panel was invalid and without effect.
The appellant also asserts that his September 19, 2007 complaint was improperly declared invalid and without effect by PCF.
In Golden, the PCF board acknowledged Golden's request for the medical review panel and notified her counsel that Willis-Knighton Medical Center was a qualified health care provider under the Medical Malpractice Act. Golden, 40,801, p. 1, 924 So.2d at 460. In Golden, the plaintiff submitted the filing fee after the 45day time period expired. Id. After paying the filing fee, the plaintiff notified the PCF that the parties had selected an attorney-chairman of the Medical Review Panel and wished to have the board notify him of *259 their decision. Id., p. 2, 924 So.2d at 460-61. The PCF returned the untimely filing fee and refused to notify the attorney-chairman because it no longer considered the claim filed, due to the plaintiff's failure to pay the filing fee timely. Id., p. 3, 924 So.2d at 461. The court held that the PCF's duties under La. R.S. 40:1299.47(A)(3) are "mandatory duties of a clerical nature to facilitate the panel process," and the PCF had no authority to unilaterally stop the process as they did in this case. Id., p. 6, 924 So.2d at 463. The only thing the PCF is authorized to do when the required filing fee is not timely paid is to notify all the parties. Id.
In Latiolais, the court expounded on the court's holding in Golden. Latiolais, 06-2403, p. 6, 979 So.2d at 493. The PCF mailed a letter to Mr. Latiolais's attorney, acknowledging receipt of the request for a medical review panel and assigned a PCF number. Id., p. 2, 979 So.2d at 490. However, Mr. Latiolais claimed that he never received the letter from the PCF stating that a filing fee was due, and Mr. Latiolais refiled his claim thereafter along with a letter stating such. Id., p. 3, 979 So.2d at 491. The court stated that "[t]he defendants must assert prescription if that claim is viable, and the PCF must continue to perform its ministerial duties." Id., p. 6, 979 So.2d at 493.
In Lane, the court stated that "[t]he defendants must assert prescription if that claim is viable, and the PCF must continue to perform its ministerial duties." Lane, 07-0150, 4 So.3d at 803.
As the Golden court stated, "it is not the PCF Board's place to assert prescription and effectively dismiss plaintiffs claim with prejudice." Golden, 40,801, p. 8, 924 So.2d at 464. "The defendant alone may choose to assert prescription." Id. Therefore, the defendants rather than the PCF are the proper party to assert the invalidity of the previous PCF complaint as a basis to challenge a subsequently filed PCF complaint as prescribed.
In the matter before us, the defendants asserted prescription through filed exceptions. The PCF advised Mr. Berry's counsel that he had 45 days to submit the requisite filing fee or documents required under law in lieu of that submission. Therefore, Mr. Berry was required to pay a filing fee, submit a physician's affidavit, or provide an in forma pauperis affidavit to the PCF within forty-five days of the October 22, 2008 letter.
Mr. Berry's counsel concedes that Mr. Berry failed to meet this requirement. Thus, as the trial court stated, the fact that Mr. Berry failed to remit the requisite filing fee is undisputed. The PCF subsequently informed Mr. Berry's counsel of that failure. Therefore, the trial court granted defendants' exceptions of prescription, which rendered Mr. Berry's claim invalid and without effect.
We find sufficient support for and no error in the trial court's granting of the exceptions of prescription. We therefore affirm the trial court's judgment.

DECREE
The trial court's granting of the exceptions of prescription is affirmed.
AFFIRMED.
BONIN, J., concurs with reasons.
BONIN, J., concurring.
I respectfully concur.
In response to Mr. Berry's claim for medical malpractice review filed on January 14, 2008 with the PCF, the healthcare providers, Dr. Butler and Tulane University Hospital, filed the plea of liberative prescription of one year. La. R.S. 40:1299.47 B(2); La. C.C. art. 3447. Because *260 that written request alleged the date of the last act or omission as no later than December 31, 2005 and it did not allege a later "date of discovery of the alleged act, omission, or neglect," the action was prescribed on its face. See La. R.S. 9:5628 A. See also Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502. When an action is prescribed on its face, the patient bears the burden of showing that the action has not prescribed. See LeBreton v. Rabito, 97-2221, p. 6 (La.7/8/98), 714 So.2d 1226, 1228. Stated another way, the burden is upon the patient to prove that the filing was timely and that his action is not barred by his inaction for a period of more than one year. See Campo v. Correa, 01-2707, p. 9-10, 828 So.2d at 509.
Mr. Berry sought to establish the timeliness of his action by showing that he had filed an earlier claim with the PCF within one year of his discovery of the health care providers' malpractice. The trial court determined from the patient's evidence at the hearing that the latest date of discovery of any alleged malpractice was in November 2006. This finding is subject to manifest error review. See Marino v. Tenet Healthsystem Medical Center, 09-915 (La. App. 4 Cir. 11/24/09), 26 So.3d 297, 300. Mr. Berry's contention is that an earlier, identical written request for malpractice review, filed with the PCF on September 19, 2007 suspended the prescriptive period. See La. R.S. 40:1299.47 A(2)(a). But the healthcare providers respond that the September 19, 2007 claim filed with the PCF was not a valid request which suspended the time within which to bring a proper legal action because Mr. Berry never timely paid the filing fee of $200, which was undisputed.[1]See La. R.S. 40:1299.47 A(1)(c) through (e). The failure to timely pay the filing fees with the PCF "shall render the request for review of a malpractice claim invalid and without effect." La. R.S. 40:1299.47 A(1)(e); Bosarge v. Louisiana Patient's Compensation Fund, 08-1923 (La.App. 1 Cir. 5/8/09), 16 So.3d 10.[2] Without timely payment of the fees, the September 19, 2007 request, despite being filed within one year of the date of discovery of the malpractice, is "invalid and without effect" and is no avail to Mr. Berry in proving the timeliness of his January 14, 2008 request. See Smart v. West Jefferson Medical Center, 09-366, p. 3 (La. App. 5 Cir. 11/24/09), 28 So.3d 1119, 1123 ("As the filing fees required by statute were not timely paid for the original malpractice claim and request for medical review panel, the request for review of the malpractice claim is invalid and without effect. That is, it has no effect on the running of prescription of the claim.").
In view of the Louisiana Supreme Court's pronouncement on rehearing in Borel v. Young, 07-0419, p. 27 (La.7/1/08), 989 So.2d 42, 68 ("[T]he specific provisions of the Medical Malpractice Act regarding the suspension of prescription against joint tortfeasors apply to the exclusion of the general code article on interruption of prescription against joint tortfeasors, LSA-C.C. 2324(C)."), Mr. Berry suggests no other legal or factual grounds to prove that this request was otherwise timely. See also Richard v. Tenet Health Systems, *261 Inc., 03-1933, p. 3 n. 1 (La.App. 4 Cir. 4/14/04), 871 So.2d 671, 673 n. 1.
The patient, in the view of the trial court, did not carry his burden of proof. Mr. Berry's request for review of his malpractice claim against Dr. Butler and Tulane University Hospital is barred by his inaction for more than one year after the discovery of the malpractice. The plea of prescription filed by the healthcare providers was properly sustained by the district court and the claim dismissed with prejudice. La. C.C.P. arts. 927 A(1) and 934. I, therefore, concur.
NOTES
[1] The spelling of Dr. Laundry's name is used interchangeably as "Laundry" and "Landry" in the record.
[2] Counsel for the appellant states that he, in fact, received this notification as to which of the named healthcare providers were "qualified" under Act 961 and that the letter requested that a specific fee be remitted within 45 days of that notice.
[1] Counsel for Mr. Berry demonstrated commendable candor to the court about the circumstances of the non-payment.
[2] We recently denied supervisory relief from an interlocutory judgment denying an exception of prescription and upheld the trial court at this stage of the proceedings where it concluded on the facts that the matter was not prescribed despite the invalidity of the earlier PCF complaint due to non-payment of the filing fees. In re Medical Review Panel Proceedings For the Claim of Bosarge, 09-1345 (La.App. 4 Cir. 11/13/09) (unpub.).